[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15016
_____

D.C. Docket No. 5:14-mc-00002-MTT


MARION E. PITCH,
The Personal Representative of the Estate of Anthony S. Pitch,

Plaintiff – Appellee,

LAURA WEXLER,

Intervenor,

versus

UNITED STATES OF AMERICA,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 27, 2020)

Before ED CARNES, Chief Judge, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, TJOFLAT, and MARCUS, Circuit Judges.[*]

TJOFLAT, Circuit Judge:

The grand jury, as an institution, has long been understood as a "constitutional fixture in its own right," operating independently of any branch of the federal government.  *United States v. Williams*, 504 U.S. 36, 47, 112 S. Ct. 1735, 1742 (1992) (internal quotation marks omitted).  That independence allows the grand jury to serve as a buffer between the government and the people with respect to the enforcement of the criminal law.  But the ability of the grand jury to serve this purpose depends upon maintaining the secrecy of its proceedings.  The long-established policy of upholding the secrecy of the grand jury helps to protect the innocent accused from facing unfounded charges, encourages full and frank testimony on the part of witnesses, and prevents interference with the grand jury's deliberations.  *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219, 99 S. Ct. 1667, 1673 (1979).

---

[*] Judges Gerald Bard Tjoflat and Stanley Marcus were members of the en banc Court that heard oral argument in this case.  Judges Tjoflat and Marcus took senior status on November 19, 2019, and December 6, 2019, respectively, and both have elected to participate in this decision pursuant to 28 U.S.C. § 46(c)(2).  Judges Robert J. Luck and Barbara Lagoa joined the Court on November 19, 2019, and December 6, 2019, respectively, and did not participate in these en banc proceedings.

Rule 6 of the Federal Rules of Criminal Procedure, which governs matters related to the grand jury, continues this traditional practice of secrecy. In particular, Rule 6(e) codifies the traditional rule of grand jury secrecy and provides a comprehensive framework for determining whether and under what conditions the records of grand jury proceedings may be released. The issue we must decide is whether a district court may order the release of grand jury materials in circumstances not explicitly covered by Rule 6(e).

In this case, Anthony S. Pitch, an author and historian, petitioned the U.S. District Court for the Middle District of Georgia for the grand jury transcripts related to the Moore's Ford Lynching—a horrific event involving the murders of two African American couples for which no one has ever been charged—to be used in his book about the lynching. His request admittedly did not fall within any of Rule 6(e)'s stated exceptions to the general rule of grand jury secrecy. The District Court nonetheless granted his petition, relying on our decision in *In re Petition to Inspect & Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir. 1984). In *Hastings*, we held that a district court may, pursuant to its inherent, supervisory power over the grand jury, authorize the disclosure of grand jury records outside of Rule 6(e)'s enumerated exceptions in certain "exceptional circumstances." *Id.* at 1268–69. Here, the District Court found that the historical significance of the grand jury's investigation, and the critical role the records of

3

that investigation would play in enhancing the historical record on this tragic event, amounted to "exceptional circumstances" that justified the Court's use of its inherent power to order disclosure. *In re Pitch*, 275 F. Supp. 3d 1373, 1383 (M.D. Ga. 2017), *aff'd sub nom. Pitch v. United States*, 915 F.3d 704 (11th Cir. 2019), *reh'g en banc granted, opinion vacated,* 925 F.3d 1224 (11th Cir. 2019).

A panel of this Court, "bound by our decision in *Hastings*," affirmed the District Court's exercise of its inherent, supervisory power to authorize disclosure of grand jury records outside the confines of Rule 6(e) for matters of historical significance. 915 F.3d at 707; *see also id.* at 713 (Jordan, J., concurring) ("Given our decision in *Hastings*, I do not see how we can say that the district court abused its discretion in relying on its inherent authority."). We reheard the case en banc to reconsider our holding in *Hastings*—that district courts have inherent power to go beyond the exceptions listed in Rule 6(e)—and to determine whether, if such inherent power does exist, district courts may exercise that power to recognize an exception to grand jury secrecy for matters of historical significance. We now hold that Rule 6(e) is exhaustive, and that district courts do not possess inherent, supervisory power to authorize the disclosure of grand jury records outside of Rule 6(e)(3)'s enumerated exceptions. We therefore overrule our holding in *Hastings* to the contrary.

4

I.

To appreciate why Pitch is seeking the grand jury records in a decades-old case, we begin by describing the incident that prompted the grand jury's investigation and the continued interest in that investigation. In July 1946, a crowd of people in Walton and Oconee Counties, Georgia gathered as two African American couples were dragged from a car and brutally murdered in what some consider to be the last mass lynching in American history. The event, known as the Moore's Ford Lynching, sparked national outrage and eventually led both the Georgia Bureau of Investigation ("GBI") and the Federal Bureau of Investigation ("FBI") to investigate the murders. In late 1946, after approximately four months of investigation, a federal grand jury was convened in the U.S. District Court for the Middle District of Georgia in Athens. The grand jury heard sixteen days of testimony from countless witnesses, but nonetheless failed to charge anyone with the murders. The case remains unsolved.

The circumstances surrounding the Moore's Ford Lynching, and especially the grand jury's failure to indict, continue to draw attention from activists and scholars alike. The Moore's Ford Memorial Committee—a group of politicians, civil rights activists, and victims' relatives—gather each year to lead a rally and a reenactment in honor of the victims. The GBI and FBI have reopened their investigations into the lynching several times over the past seven decades, but to

5

no avail.  More recently, in 2007, over three thousand pages of the FBI investigation file were released to the public under a Freedom of Information Act request.  The records of the proceedings before the 1946 grand jury are one of the few records related to the Moore's Ford Lynching that remain sealed.

Enter Anthony S. Pitch.  Pitch was a historian who authored several books about major historic events, such as President Abraham Lincoln's assassination and the British invasion of Washington in 1814.  His latest work, published in March 2016, focused on the Moore's Ford Lynching.  Seeking additional source material for his book, Pitch petitioned the District Court in 2014 to unseal the federal grand jury records related to the Moore's Ford Lynching.  The District Court initially denied the petition because there was no evidence that the records existed.  Pitch renewed his petition in 2017, after learning that the transcripts of the grand jury testimony may be located at the National Archives in Washington, D.C. The District Court ordered the Government to produce the records for *in camera* inspection, and the Government filed the transcripts under seal.

This time, the District Court granted Pitch's request and ordered the transcripts unsealed.  Although the District Court acknowledged that "Pitch's request does not fit within any of Rule 6(e)'s exceptions," it invoked its inherent power to release the transcripts under our reasoning in *Hastings*.  275 F. Supp. 3d at 1381–83.

6

In *Hastings*, the Judicial Investigating Committee of the Eleventh Circuit sought access to the records of the grand jury that had indicted District Judge Alcee Hastings on bribery charges—charges for which Hastings was later tried and acquitted—to determine whether Hastings should be disciplined for violations of the Code of Judicial Conduct.  735 F.2d at 1263.  We noted[1] that the Committee's request did not quite fall within the exception in then-Rule 6(e)(3)(C)(i)—now Rule 6(e)(3)(E)(i)—for disclosures, "preliminarily to or in connection with a judicial proceeding," since the investigation of Hastings was not a judicial proceeding in the "strict legal sense."  *Id.* at 1271–72.[2]  Nonetheless, we held that the District Court properly exercised its inherent, supervisory power over the grand jury to authorize release of the materials outside the strict bounds of Rule 6(e).  *Id.* at 1272.[3]  In doing so, we explained that Rule 6(e)'s exceptions "were not intended to ossify the law, but rather are subject to development by the courts in conformance with the rule's general rule of secrecy."  *Id.* at 1269 (citing *Fallen v.*

---

[1] The panel that decided *Hastings* was composed of three non-Eleventh Circuit judges selected by the Chief Justice of the U.S. Supreme Court pursuant to 28 U.S.C. § 291.  All Eleventh Circuit judges had recused themselves because of the conflict presented by the underlying investigation of a district judge within the Eleventh Circuit.

[2] We explained, however, that the proceedings "closely mirror[ed] Justice Holmes's definition" of a "judicial inquiry": "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end."  *Id.* at 1271 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67, 69 (1908)).

[3] We did so largely because we believed the committee's proceeding was so "closely akin" to the judicial-proceeding exception.  *Id.*

7

*United States*, 378 U.S. 139, 142, 84 S. Ct. 1689, 1691 (1964)).  District courts therefore retained "inherent power beyond the literal wording of Rule 6(e)" to authorize disclosure of grand jury materials not explicitly covered by the rule.  *Id.* at 1268.  We cautioned, however, that district courts may only act outside Rule 6(e) in "exceptional circumstances consonant with the rule's policy and spirit."  *Id.* at 1269.

In this case, a divided panel of this Court affirmed that the District Court appropriately exercised its substantial discretion under *Hastings* when it decided to release the records of the Moore's Ford grand jury pursuant to its inherent, supervisory power.  *Pitch*, 915 F.3d at 713.  Specifically, the panel explained that "[u]nder the proper circumstances, grand jury records on a matter of exceptional historical significance may trigger a district court's inherent authority to disclose them."  *Id.* at 710.  Put differently, the "exceptional historical significance" of the grand jury records may constitute the "exceptional circumstances" described in *Hastings* that would justify the district court in exercising its inherent power to disclose the records, even though no Rule 6(e) exception applies.  *See Hastings*, 735 F.2d at 1269.  In determining whether the facts that Pitch presented amounted to "exceptional circumstances," the panel (like the District Court) balanced the public interest in the continued secrecy of the grand jury records against the need for disclosure, *id.* at 709–10 (citing *Hastings*, 735 F.2d at 1272, 1275; *Douglas Oil*,

8

441 U.S. at 223, 99 S. Ct. at 1675), relying primarily on the multi-factor test outlined by the Second Circuit in *In re Petition of Craig*, 131 F.3d 99, 106 (2d Cir. 1997).[4] It ultimately found that, because of the substantial historical interest in the records, which has persisted over time, and the relatively low risk that any witnesses, suspects, or their immediate family members would be intimidated, persecuted, or arrested, the District Court did not abuse its discretion in unsealing the grand jury materials. *Pitch*, 915 F.3d at 711–13.

We voted to rehear the case en banc to determine whether we should overrule our holding in *Hastings*—that district courts have inherent power to go beyond the exceptions listed in Rule 6(e) to order the disclosure of grand jury records—and, if not, whether a district court may exercise its inherent power to recognize a historical-significance exception to the general rule of grand jury

---

[4] The Second Circuit in *In re Petition of Craig* developed the following "non-exhaustive list of factors" for a trial court to weigh when applying the *Douglas Oil* balancing test to the disclosure of historically significant grand jury records:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

131 F.3d at 106.

secrecy.[5]

## II.

The questions before us implicate the long-established policy that grand jury proceedings in federal courts should be kept secret. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424, 103 S. Ct. 3133, 3138 (1983); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S. Ct. 983, 986 (1958). The Supreme Court has long "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil*, 441 U.S. at 218, 99 S. Ct. at 1672 (citing *Procter & Gamble*, 356 U.S. at 681, 78 S. Ct. at 986). That secrecy serves several vital purposes, including:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to

[5] Pitch passed away while this case was pending en banc. We granted the unopposed motion to substitute Marion E. Pitch, the personal representative of Anthony Pitch's estate, as the Petitioner-Appellee in this appeal pursuant to Federal Rule of Appellate Procedure 43(a). We also asked the parties to file supplemental letter briefs to address whether the appeal is moot in light of Pitch's death. Pitch's Estate and his family have expressed their intent to carry out Pitch's research; they intend to review the grand jury transcripts and to use those transcripts to complete the book that Pitch had been working on until his untimely death. To that end, they sought the assistance of Laura Wexler, another historian who, like Pitch, has authored a book on the Moore's Ford Lynching. Ms. Wexler separately filed a motion to intervene in this appeal, claiming that she had a similar interest in securing the release of the grand jury records so that she could complete her own scholarly work on the Moore's Ford Lynching. We granted the motion to intervene. In light of the substitution of Pitch's Estate and the addition of Ms. Wexler as a party—and the apparent agreement between the two parties to complete the project for which the grand jury records were originally sought—we find that this appeal is not moot.

encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* at 219 n.10, 99 S. Ct. at 1673 n.10 (alteration in original) (quoting *Procter & Gamble*, 356 U.S. at 681–82 n.6, 78 S. Ct. at 986 n.6).  Accordingly, both Congress and the Supreme Court have consistently stood ready to defend the secrecy of the grand jury against any unwarranted intrusions.  *Sells Eng'g*, 463 U.S. at 425, 103 S. Ct. at 3138.

Rule 6(e) codified the traditional rule of grand jury secrecy.  *Id.*  Since its promulgation in 1946, Rule 6(e) has governed the disclosure of grand jury records. *Illinois v. Abbott & Assocs.*, 460 U.S. 557, 566, 103 S. Ct. 1356, 1361 (1983). Even so, Pitch argues that Rule 6(e) is not exhaustive, and thus does not eliminate district courts' inherent, supervisory power over the grand jury to authorize disclosure in circumstances not covered by the rule.  Relying on *Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016), he argues that Rule 6(e) is merely permissive, and as such does not "abrogate the power of the courts" to exercise their historic "inherent power" in the absence of a contradictory Rule 6(e) provision.  Accordingly, he says, since Rule 6(e) does not cover the type of disclosure requested here, "[a] judge may regulate [the] practice in any manner consistent with federal law, these rules, and the local rules of the district [court]."

11

Fed. R. Crim. P. 57(b); *see also Carlson*, 837 F.3d at 762 (explaining that Rule 57(b) informs a district court what it may do when the Federal Rules of Criminal Procedure are otherwise silent).

Since we first interpreted Rule 6(e) in *Hastings*, several other circuits have considered whether district courts may authorize the disclosure of grand jury records outside the circumstances listed in that rule. Some agree with Pitch and so have held, like we did in *Hastings*, that district courts may invoke their inherent, supervisory authority over the grand jury to permit the disclosure of grand jury records outside the text of Rule 6(e). *See Carlson*, 837 F.3d at 763–66; *In re Petition of Craig*, 131 F.3d at 103; *see also McKeever v. Barr*, 920 F.3d 842, 853–55 (D.C. Cir. 2019) (Srinivasan, J., dissenting), *cert. denied*, 140 S. Ct. 597 (2020); *cf. In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005) (holding that a district court may exercise its inherent judicial power to *impose* an obligation of secrecy on a grand jury witness, even though witnesses are not covered by Rule 6(e)(2)(B)'s secrecy requirement). Other circuits have refused to authorize the disclosure of grand jury records outside of Rule 6(e)'s stated exceptions to the general rule of secrecy, finding those exceptions to be exhaustive. *See McKeever*, 920 F.3d at 845; *United States v. McDougal*, 559 F.3d 837, 840–41 (8th Cir. 2009) ("'Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside,' . . . courts will not order disclosure absent a

12

recognized exception to Rule 6(e) or a valid challenge to the original sealing order or its implementation." (alteration omitted) (quoting *Williams*, 504 U.S. at 47, 112 S. Ct. at 1742)); *In re Grand Jury 89-4-72*, 932 F.2d 481, 488 (6th Cir. 1991) ("[W]ithout an unambiguous statement to the contrary from Congress, we cannot, and must not, breach grand jury secrecy for any purpose other than those embodied by the Rule."); *see also Carlson*, 837 F.3d at 767–68 (Sykes, J., dissenting).[6]

We now depart from our analysis in *Hastings*, and join the Sixth, Eighth, and District of Columbia Circuits in their interpretation of Rule 6(e). We disagree with Pitch that Rule 6(e) is merely a permissive rule—"a rule that permits a court to do something and does not include any limiting language." *Carlson*, 837 F.3d at 763. To the contrary, Rule 6(e) provides an exhaustive list of detailed circumstances in which a district court may authorize disclosure. It lays out a general rule of secrecy followed by a set of carefully considered exceptions that

---

[6] Three other circuits have also suggested, in dicta, that Rule 6(e)'s exceptions are exhaustive. *See United States v. Educ. Dev. Network Corp.*, 884 F.2d 737, 740 (3d Cir. 1989) ("Rule 6(e)(2) provides in general that matters occurring before the grand jury may not be disclosed. *Disclosure of such matters may only be made under the narrow exceptions listed in Rule 6(e)(3).*" (emphasis added)); *In re J. Ray McDermott & Co., Inc.*, 622 F.2d 166, 172 (5th Cir. 1980) ("Rule 6(e) . . . permit[s] disclosure of grand jury materials *in certain specific circumstances*. A district court to whom application for disclosure is made does exercise discretion in granting disclosure *but may not thereby enlarge the exceptions to grand jury secrecy*." (emphases added)); *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1108–09 (4th Cir. 1978) ("Rule 6(e), as recently amended, provides generally that materials secured by the grand jury in the course of its investigation *shall not be disclosed except as authorized in subsection (2).*" (emphasis added) (footnote omitted)).

13

limit the district court's authority to disclose the records of a grand jury's proceedings. The rule thus leaves no room for district courts to fashion new exceptions beyond those listed in Rule 6(e). We therefore hold that Rule 6(e) by its plain terms limits disclosures of grand jury materials to the circumstances enumerated therein.

## A.

Rule 6(e) covers both the recording of the grand jury's proceedings and the disclosure of those records. With respect to disclosure, Rule 6(e)(2), entitled "Secrecy," announces a general rule of secrecy. It mandates that various persons who participate before the grand jury, other than witnesses, "must not disclose a matter occurring before the grand jury," "[u]nless these rules provide otherwise." Fed. R. Crim. P. 6(e)(2)(B).[7]

Rule 6(e)(3) then lays out a set of five detailed "[e]xceptions" to this general rule of nondisclosure. Fed. R. Crim. P. 6(e)(3). It provides that a government attorney may,[8] without prior court approval, disclose grand jury records to other

---

[7] Rule 6(e)(2)(B) lists seven individuals who are prohibited from disclosing a matter occurring before the grand jury: a grand juror, an interpreter, a court reporter, an operator of a recording device, a person who transcribes recorded testimony, an attorney for the government, and a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

[8] Under Rule 6(e)(1), the grand jury records remain in the custody and control of a government attorney, unless the district court orders otherwise. Thus, as a practical matter, it is the government—and not the district court—that actually discloses the grand jury records.

government attorneys or officials for use in performing the attorneys' duties, or to other grand juries for the purpose of conducting criminal or intelligence investigations. *See* Fed. R. Crim. P. 6(e)(3)(A)–(D). It then specifies that a "court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter" (1) "preliminarily to or in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), (2) "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii), or (3) at the request of the government for use in a foreign, state, tribal, or military criminal investigation, Fed. R. Crim. P. 6(e)(3)(E)(iii)–(v).

The text and structure of Rule 6(e) thus indicate that the rule is not merely permissive. Rather, it imposes a general rule of nondisclosure, then instructs that deviations from that rule are not permitted "[u]nless these rules provide otherwise," and then provides a detailed list of exceptions that specifies precisely when the rules "provide otherwise."

"Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S. Ct. 1905, 1910 (1980). We find nothing in the text of Rule 6(e) to indicate an intent to permit a district court to go beyond the enumerated

15

exceptions. The Rule does not, for example, introduce the exceptions with a term like "including," which might indicate that the exceptions are merely illustrative. *See McKeever*, 920 F.3d at 845. Nor does it contain a residual exception that might accommodate the judicial fashioning of new exceptions in addition to the ones listed. *See id.*

In fact, the text of Rule 6(e) suggests just the opposite intent. The drafters of Rule 6(e)(2) permitted deviations from the general rule of secrecy only when the "*rules* provide otherwise"—not when the *court* provides otherwise. That choice of language is significant because in another subsection of Rule 6(e), the drafters directly and unambiguously gave the district court the power to act outside the text of the rule. Rule 6(e)(1) provides: "*Unless the court orders otherwise*, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes." Fed. R. Crim. P. 6(e)(1) (emphasis added). This subsection demonstrates that the drafters of Rule 6 knew how to craft a provision granting the district court the authority to act outside the text of the rule, but intentionally chose not to do so in Rule 6(e)(2). Their decision to use the phrase "[u]nless these rules provide otherwise," instead of the phrase "[u]nless the court orders otherwise" from the immediately preceding subsection, indicates that the drafters intended the general rule of secrecy to be breached only in accordance with the Federal Rules of Criminal Procedure, and not that a district court had the

16

power to do so outside the confines of the rule. *See Carlson*, 837 F.3d at 770 (Sykes, J., dissenting) ("The straightforward meaning of th[e] text [of the rule, which *mandates* secrecy 'unless these rules provide otherwise'] is that grand-jury secrecy may not be breached except as specifically provided in the rules."). This intentional choice of language highlights the drafters' understanding that disclosure should be limited to the text of Rule 6(e).

Our interpretation of Rule 6(e) as exhaustive is consistent with the Supreme Court's warning that we must be reluctant to conclude that a breach of grand jury secrecy has been authorized in the absence of a clear indication in a Rule or statute. *Sells Eng'g*, 463 U.S. at 425, 103 S. Ct. at 3138; *see also Abbott & Assocs.*, 460 U.S. at 572–73, 103 S. Ct. at 1364 (explaining that while Congress "has the power to modify the rule of secrecy . . . the rule is so important, and so deeply-rooted in our traditions, that we will not infer that Congress has exercised such a power without affirmatively expressing its intent to do so"). Indeed, while the Supreme Court has not yet addressed the question, the Court has on several occasions suggested that Rule 6(e) is exclusive. *See McKeever*, 920 F.3d at 846 (collecting cases). As early as 1959, the Supreme Court recognized that "any disclosure of grand jury minutes is covered by [Rule] 6(e)." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398, 79 S. Ct. 1237, 1240 (1959). And when interpreting the exception in Rule 6(e) for grand jury matters "preliminarily to or in

17

connection with a judicial proceeding," the Supreme Court explained that the exception "is, on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials." *United States v. Baggot*, 463 U.S. 476, 479, 103 S. Ct. 3164, 3167 (1983). More recently, the Supreme Court described Rule 6(e) as "placing strict controls on disclosure of 'matters occurring before the grand jury.'" *Williams*, 504 U.S. at 46 n.6, 112 S. Ct. at 1741–42 n.6 (citing *Sells Eng'g*, 463 U.S. 418, 103 S. Ct. 3133).

The contrary interpretation proposed by Pitch—that Rule 6(e)(3)(E)'s exceptions are only permissive—would render the detailed list of exceptions to Rule 6(e)(2) merely precatory. It is hard to imagine why Congress and the Rules Committee would bother to craft and repeatedly amend these detailed exceptions if they were meant only to be an illustration of when a district court may authorize the disclosure of grand jury records. We therefore disagree with the Seventh Circuit that it is "entirely reasonable" to infer that Congress and the Supreme Court intended the list as a guideline of frequently invoked reasons for disclosing grand jury materials, simply to indicate to the district court that it should not hesitate to authorize disclosure in those cases. *See Carlson*, 837 F.3d at 764–65.

In fact, the Supreme Court has recognized that the exceptions listed in Rule 6(e)(3) "reflect[] a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy."

18

*Baggot*, 463 U.S. at 480, 103 S. Ct. 3167 (interpreting what is now Rule 6(e)(3)(E)(i)).  Pitch's interpretation of Rule 6(e) would thus permit district courts to circumvent the policy judgments made by Congress and the Supreme Court that grand jury secrecy should be relaxed for certain purposes and not others.  It would allow a single district court to disrupt the balance struck by Congress and the Supreme Court to create such new exceptions as it thinks make good public policy,[9] contrary to the express limitation on the district court's power contained in Rule 6(e).  *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016); *McKeever*, 920 F.3d at 845; *see also Carlisle v. United States*, 517 U.S. 416, 426, 116 S. Ct. 1460, 1466 (1996) ("Whatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure.").

---

[9] The problem is amplified here, as the creation of a historical-significance exception involves two layers of policy judgments.  The first is the decision to recognize an exception for matters of historical significance generally.  The second involves deciding what it means for something to be so "historically significant" that the interest in disclosure outweighs any interest that the grand jurors, witnesses, and future generations, among others, have in maintaining the secrecy of the proceedings.  Under Pitch's interpretation of Rule 6(e), then, a single district judge would have the authority to substitute his or her own judgments on these policy questions on a case-by-case basis, with the inevitable result that the exceptions to the general rule of grand jury secrecy would vary from one court to the next across the nation.  Without consistent guidance as to when grand jury testimony may be disclosed, future witnesses may be deterred from testifying before the grand jury, and potential grand jurors may be deterred from serving on grand juries, fearing that a judge may someday decide that the subject-matter of the grand jury's investigation was so important that it should no longer be kept secret.  *See Douglas Oil*, 441 U.S. at 222, 99 S. Ct. at 1674.  The uncertainty would have a chilling effect on future grand jury witnesses and would render the grand jury as an institution inoperable.  *See, e.g.*, *id.* at 218, 99 S. Ct. at 1672 (recognizing the importance of secrecy to the proper functioning of the grand jury system).

19

For these reasons, we find that the text of Rule 6(e) is best understood as limiting the disclosure of grand jury materials to the circumstances carefully defined in Rule 6(e)(3)(E). We therefore agree with the Government that Rule 6(e)(3)(E)'s list of exceptions to the general rule of grand jury secrecy is exclusive, and that district courts may not rely on their inherent, supervisory power to authorize disclosure of grand jury materials outside the bounds of that rule. To the extent that we held in *Hastings* that such inherent power does exist, that holding is overruled.

### B.

Pitch's textual arguments to the contrary are not persuasive. Pitch first argues that district courts are not bound by the obligation of secrecy in Rule 6(e)(2), because the district court is not on the list of people in Rule 6(e)(2)(B) to whom the obligation of secrecy applies. Rule 6(e)(2)(A) provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Fed. R. Crim. P. 6(e)(2)(A). Rule 6(e)(2)(B) then lists the seven people who are prohibited from disclosing any matter occurring before the grand jury: a grand juror, an interpreter, a court reporter, an operator of a recording device, a person who transcribes recorded testimony, an attorney for the government, and other government personnel to whom disclosure is made under the rules or by statute. Fed. R. Crim. P. 6(e)(2)(B). The district court is absent

20

from this list. Accordingly, the argument goes, the district court cannot be bound by the obligation of secrecy in Rule 6(e)(2).

Pitch's argument is difficult to square with how the grand jury operates in practice. The grand jury is by design an institution independent from the Judicial Branch. *Williams*, 504 U.S. at 47–48, 112 S. Ct. at 1742–43 (citing *United States v. Calandra*, 414 U.S. 338, 343, 94 S. Ct. 613, 617 (1974)). Accordingly, the district court neither presides over the grand jury nor monitors its proceedings. *Id.* at 48, 112 S. Ct. at 1742 (citing *Calandra*, 414 U.S. at 343, 94 S. Ct. at 617). In fact, Rule 6 does not permit the district judge to be present in the grand jury room at all. *See* Fed. R. Crim. P. 6(d). The extent of the district court's "involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office," or to enforcing grand jury subpoenas. *Williams*, 504 U.S. at 47–48, 112 S. Ct. at 1742–43 (citing *Calandra*, 414 U.S. at 343, 94 S. Ct. at 617).

It is not surprising, then, that district courts are not included in Rule 6(e)(2)(B). The individuals listed in Rule 6(e)(2)(B) are those who are either *present* in the grand jury room during its proceedings or who are otherwise made privy to the grand jury's proceedings because Rule 6(e)(3) explicitly so provides. Unlike the individuals listed, the district court is not a participant in the grand jury proceedings, and thus is not ordinarily privy to those proceedings unless and until a

21

party raises an issue having to do with the grand jury, *see, e.g.*, Fed. R. Crim. P. 6(e)(3)(E)(ii), or the district court is called upon by the grand jury to enforce a subpoena. In fact, Rule 6(e)(1) contemplates that, in the ordinary case, a government attorney maintains custody of the grand jury records—not the court.[10] Therefore, the district court's absence from Rule 6(e)(2)(B) does not mean that the district court has no secrecy obligations with respect to grand jury proceedings.

Second, Pitch points to the text of Rule 6(e)(3)(E), which prefaces its list of exceptions with the following phrase: "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . ." Pitch argues that the use of the word "may" here implies "some degree of discretion," which supports a permissive (rather than exclusive) reading of Rule 6(e)(3)(E)'s enumerated exceptions. *See Carlson*, 837 F.3d at 765 (quoting *United States v. Rodgers*, 461 U.S. 677, 706, 103 S. Ct. 2132, 2149 (1983)).

To be sure, a district court must exercise a degree of discretion in deciding whether to release grand jury materials under Rule 6(e). But it does not follow that Rule 6(e) is merely permissive. "May" in this context means only that, even if a

---

[10] *See supra* note 8. When the district court authorizes disclosure under Rule 6(e)(3)(E), then, it must do so by ordering a government attorney to disclose the grand jury records that are in his or her possession. *See McKeever*, 920 F.3d at 848. In effect, the court releases the government attorney from his or her obligation of secrecy under Rule 6(e)(2)(B).

request for grand jury materials falls within one of Rule 6(e)(3)(E)'s enumerated exceptions, a district court may nonetheless exercise its discretion to deny the request. A petitioner is not entitled to the release of grand jury materials simply because his or her request falls within a listed exception to grand jury secrecy. A district court must still exercise its "substantial discretion" to weigh "the extent of the need for continuing grand jury secrecy, the need for disclosure, and the extent to which the request was limited to that material directly pertinent to the need for disclosure." *Douglas Oil*, 441 U.S. at 223–24, 99 S. Ct. at 1675.

The Supreme Court recognized as much in *Pittsburgh Plate Glass* when it stated that "Rule 6(e) is but declaratory" of the principle that the disclosure of grand jury materials is committed to the discretion of the trial court. 360 U.S at 399, 79 S. Ct. at 1240. Pitch reads *Pittsburgh Plate Glass* as supporting the proposition that district courts have broad discretion to release grand jury materials outside of Rule 6(e)'s enumerated exceptions. But in fact, *Pittsburgh Plate Glass* involved a request for disclosure under one of Rule 6(e)'s enumerated exceptions. *See id.* at 396 n.1, 79 S. Ct. at 1239 n.1; *see also id.* at 398, 79 S. Ct. at 1240 ("Petitioners concede, as they must, that any disclosure of grand jury minutes is covered by [Rule] 6(e)."). Thus, "[t]he only 'discretion' at issue involved the district court's determination whether the party seeking material covered by the exception had made a sufficiently strong showing of need to warrant disclosure."

23

*McKeever*, 920 F.3d at 846 (citing *Pittsburgh Plate Glass*, 360 U.S. at 398–99, 79 S. Ct. at 1240); *accord Douglas Oil*, 441 U.S. at 217–24, 99 S. Ct. at 1672–75 (describing the same discretion).  While a district court's determination whether to order disclosure under Rule 6(e) necessarily involves some degree of discretion, that discretion is limited by the text of the rule.  *Pittsburgh Plate Glass* does not suggest otherwise.

### III.

Pitch also makes two arguments based on the Advisory Committee's notes to Rule 6.  First, Pitch points to language in the Advisory Committee note to the original Rule 6(e), which states that the rule "continues the traditional practice of secrecy on the part of members of the grand jury, *except when the court permits a disclosure*."  Fed. R. Crim. P. 6 original advisory committee's note (emphasis added) (citing *Schmidt v. United States*, 115 F.2d 394 (6th Cir. 1940); *Atwell v. United States*, 162 F. 97 (4th Cir. 1908); *United States v. Am. Med. Ass'n*, 26 F. Supp. 429 (D.D.C. 1939)).  Pitch argues that, as we said in *Hastings*, this language demonstrates with "certain[ty] that a court's power to order disclosure of grand jury records is not strictly confined to instances spelled out in the rule."  *See Hastings*, 735 F.2d at 1268.

We disagree.  Like the current version of Rule 6(e), the original version of

24

the rule specified precisely when a court may "permit[] a disclosure."[11]  It first

provided that grand jury matters may be disclosed to government attorneys for use

in the performance of their duties without any involvement by the court.  Fed. R.

Crim. P. 6(e), 327 U.S. 827, 837 (1945).  It then provided two specific

circumstances in which disclosure was permitted only when directed by the court:

first, when disclosure was sought "preliminarily to or in connection with a judicial

proceeding," and second, "at the request of the defendant upon a showing that

grounds may exist for a motion to dismiss the indictment because of matters

occurring before the grand jury."  *Id.* at 838.  There is nothing in the text of the rule

to indicate that the phrase "except when the court permits a disclosure" referred to

discretionary disclosures beyond those two exceptions outlined in the rule itself.

We read the Advisory Committee's note as referring to the exceptions in the text of

---

[11] The full text of Rule 6(e), as originally enacted, read:

SECRECY OF PROCEEDINGS AND DISCLOSURE. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons.

Fed. R. Crim. P. 6(e), 327 U.S. 827, 837–38 (1945).

25

the rule.

Our understanding of the Advisory Committee's note is consistent with the cases cited therein. All three of the cases cited by the Advisory Committee dealt with the question whether a defendant may interrogate the members of the grand jury that had returned an indictment against him for the purpose of gathering evidence to challenge the sufficiency of that indictment. *See Schmidt*, 115 F.2d at 395; *Atwell*, 162 F. at 98; *Am. Med. Ass'n*, 26 F. Supp. at 429. And in each of those three cases the court exercised its discretion to determine whether and to what extent the grand jurors' oath of secrecy may be relaxed to permit an inquiry into the adequacy of the indictment. *See Schmidt*, 115 F.2d at 397 (holding that it is the court's responsibility to determine whether, in its discretion, to relax the rule of grand jury secrecy, and determining that the defendants had impermissibly obtained affidavits from the grand jurors in violation of the grand jurors' oath of secrecy and without prior application to or permission from the court); *Atwell*, 162 F. at 99–100, 103 (weighing reasons for and against the policy of grand jury secrecy and reversing the district court's decision to hold a grand juror in contempt for disclosing a grand jury witness's testimony to the defendants, in violation of the grand juror's oath of secrecy); *Am. Med. Ass'n*, 26 F. Supp. at 430–31 (holding that only the court may release a grand juror from his oath of secrecy, and finding that the defendants' bare assertions that the indictment was inadequate were

26

insufficient to trump the "public policy demand[ing] a lasting secrecy" on the part of the grand jurors).

The issue decided in these cases was explicitly addressed by the original version of Rule 6(e), which provided that "a juror . . . may disclose matters occurring before the grand jury only when . . . permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed. R. Crim. P. 6(e), 827 U.S. at 837–38. In other words, Rule 6(e) adopted the holdings of these cases that (1) in certain circumstances, and upon a proper showing, allegations of impropriety before the grand jury may justify relaxing the rule of grand jury secrecy, and (2) even where such circumstances exist, a defendant must receive authorization from the court to access any grand jury information.

We therefore think that this note, when understood in conjunction with the cases cited, refers only to the exceptions listed in the rule that provide for when a district court may "permit[] a disclosure." It does not mean that a district court may permit disclosure in other circumstances that it deems worthy.[12] Understood in this context, the Advisory Committee's note in fact reinforces that Rule 6(e)

---

[12] At oral argument we asked Pitch's counsel whether there were any other pre-Rule 6 cases in which a district court had allowed the disclosure of grand jury records to the general public, as Pitch requests here. Counsel could not cite any cases in which a district court had authorized such a broad disclosure, and we have found none.

27

codified all the instances in which a district court may authorize the disclosure of grand jury materials. And other Advisory Committee notes underscore that Rule 6(e) is best understood as exclusive. *See* Fed. R. Crim. P. 6 advisory committee's note to 2002 amendment ("Rule 6(e) continues to spell out the general rule of secrecy of grand-jury proceedings *and the exceptions to that general rule.*" (emphasis added)).

Second, Pitch argues that the Advisory Committee explicitly recognized in 2012 that district courts possess the inherent authority to authorize the disclosure of historically significant grand jury records. In 2012, the Advisory Committee rejected a proposal from the Attorney General that would have amended Rule 6(e) to explicitly provide for the disclosure of historically significant grand jury materials. In doing so, the Committee reached a "consensus that, in the rare cases where disclosure of historically significant materials had been sought, district judges had reasonably resolved applications by reference to their inherent authority." Advisory Committee on Criminal Rules, Minutes of Apr. 22–23, 2012, at 7, https://www.uscourts.gov/sites/default/files/fr_import/criminal-min-04-2012.pdf.

We do not give much weight to the Committee's decision not to recommend an amendment to the rule, especially forty-three years after Congress had directly

28

enacted most of the critical language itself.[13]  As the Supreme Court has reiterated,

"[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate

tool of statutory interpretation," because by definition it could have had no effect

on the congressional vote.  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242, 131 S. Ct.

1068, 1081 (2011) (citing *District of Columbia v. Heller*, 554 U.S. 570, 605, 128 S.

Ct. 2783, 2805 (2008); *Jones v. United States*, 526 U.S. 227, 238, 119 S. Ct. 1215,

1221 (1999); *United States v. Mine Workers*, 330 U.S. 258, 281–82, 67 S. Ct. 677,

690 (1947)); *accord U.S. Steel Mining Co. v. Director, OWCP*, 719 F.3d 1275,

1283 n.9 (11th Cir. 2013) (reasoning that a senator's statement made two days after

enactment of a statute did not—as post-enactment legislative history—constitute

legitimate legislative history, and declining to consider it in interpreting the

statute).  The same reasoning applies here to the committee's minutes.  Indeed,

even the Seventh Circuit in *Carlson*—which reached the opposite conclusion that

we do with respect to district courts' inherent power to authorize disclosure of

---

[13] Congress amended Rule 6(e) directly in 1977.  *See* Federal Rules of Criminal Procedure Act Amendments, Pub. L. No. 95-78, 91 Stat. 319 (1977).  Rule 6(e) was subsequently amended in 1979, 1983, and 1985, and was rearranged in large part in 2002 as part of the general restyling of the Federal Rules of Criminal Procedure.  Non-substantive changes were also made in 2006 to accommodate the effect that the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, Title VI, § 6501(a), 118 Stat. 3760, had on Rule 6, and again in 2014 to update a citation.  However, while the subsections of the rule may have changed (for example, the 2002 amendments moved certain exceptions from Rule 6(e)(3)(C) to 6(e)(3)(E), where they are now located) the relevant language for our purposes has remained substantially unchanged since 1977.

grand jury materials outside Rule 6(e)—refused to give this failure to amend Rule 6(e) any weight.  837 F.3d at 765.  As it correctly acknowledged, "the history of some unsuccessful efforts to change the rules . . . is notoriously unreliable evidence, even for those who are sympathetic to legislative history."  *Id.*  The Advisory Committee minutes are especially unreliable considering that they reflect statements made not by Congress or the Supreme Court—the only institutions with the authority to change the rule—but by a subcommittee of judges and other legal professionals.  We decline the opportunity to use such "history" to supplement the text of Rule 6(e), which plainly permits a district court to authorize the disclosure of grand jury materials only in the circumstances listed in Rule 6(e)(3)(E).[14]

---

[14] For similar reasons, we do not believe, as our dissenting colleague does, that the Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, 132 Stat. 5489 (2019) (codified at 44 U.S.C. § 2107) ("Cold Case Act")—which was enacted forty years after Congress enacted most of the relevant language of Rule 6(e) itself—prevents us from adopting the most natural interpretation of the text of Rule 6(e). *See post* at 76 (Rosenbaum, J., dissenting).  While subsequent legislation "declaring the intent of an earlier statute" may be entitled to great weight in interpreting that statute, *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 380–81, 89 S. Ct. 1794, 1801 (1969), the Cold Case Act does not declare anything about the meaning of Rule 6(e).  It simply permits the newly established Civil Rights Cold Case Records Review Board to "request the Attorney General to petition any court in the United States to release any information relevant to civil rights cold cases that is held under the injunction of secrecy of a grand jury." Pub. L. No. 115-426 at § 8(a)(2)(A).  It then provides that "a request for disclosure of civil rights cold case records under this Act shall be deemed to constitute a showing of particularized need under rule 6 of the Federal Rules of Criminal Procedure." *Id.* at § 8(a)(2)(B).  It says nothing about the scope of the court's authority under Rule 6 to grant the Attorney General's request and authorize the release of grand jury materials in a civil rights cold case.  It says nothing about what Rule 6 *means*.

Nonetheless, the dissent divines from this language that Congress must have thought that courts had the inherent authority to authorize the release of these types of grand jury materials outside the confines of Rule 6, since Rule 6(e) does not clearly permit the release of civil rights cold case records.  *Post* at 85–86 (Rosenbaum, J., dissenting).  But our task is not to discern

IV.

For the foregoing reasons, we hold that Rule 6(e) is exhaustive.  District courts may only authorize the disclosure of grand jury materials if one of the five exceptions listed in Rule 6(e)(3)(E) applies; they do not possess the inherent, supervisory power to order the release of grand jury records in instances not covered by the rule.  We therefore overrule our holding in *Hastings* that district courts have inherent power to authorize the release of grand jury materials outside the confines of Rule 6(e).

**REVERSED.**

---

Congress's unexpressed beliefs.  It is to interpret the objective meaning of the text of Rule 6(e). Because the Cold Case Act on its face says nothing about the meaning of Rule 6(e), it is not entitled to great weight in interpreting that Rule.  It certainly does not support abandoning the most natural reading of the text of Rule 6(e).

WILLIAM PRYOR, Circuit Judge, joined by ED CARNES, Chief Judge, and NEWSOM, BRANCH, GRANT, TJOFLAT, and MARCUS, Circuit Judges, concurring:

I concur in the majority's opinion, but I write separately to explain why the result reached in *In re Petition to Inspect and Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir. 1984), was right, even though its reasoning, which we overrule today, was wrong. In short, the "judicial proceeding" exception, Fed. R. Crim. P. 6(e)(3)(E)(i), plainly permitted the limited disclosure of the grand jury records to the Investigating Committee of the Judicial Council of the Eleventh Circuit in *Hastings*.

In 1981, a grand jury indicted Judge Alcee L. Hastings of the United States District Court for the Southern District of Florida for soliciting a $150,000 bribe in return for reducing the sentences of convicted mobsters, but a federal jury acquitted him at trial. *Hastings*, 735 F.2d at 1263; *The Impeachment Trial of Alcee L. Hastings (1989) U.S. District Judge, Florida*, U.S. SENATE, https://www.senate.gov/artandhistory/history/common/briefing/Impeachment_Hastings.htm (last visited Jan. 10, 2020). Following his acquittal, "suspicions arose that Hastings had lied and falsified evidence during the trial." *The Impeachment Trial*, *supra*. In response to a complaint filed by two federal judges that Hastings' actions violated the Code of Judicial Conduct, the Chief Judge of the Eleventh Circuit

32

formed a five-judge Committee, 28 U.S.C. § 372(c)(4) (1982), to investigate. *Hastings*, 735 F.2d at 1263–64.

During the investigation, the Committee petitioned the Southern District of Florida for access to the grand jury records from Hastings' criminal case. *Id.* at 1264. Hastings intervened to oppose the request on the ground that any disclosure would not fall within an exception in Rule 6(e)(3). *Id.* Although the district court agreed with Hastings that the request did not fall within any express exception in Rule 6(e)(3), it concluded that Rule 6(e)(3) did not abrogate the inherent powers of the federal courts to release grand jury information in other circumstances. *Id.* at 1265, 1267. So the district court relied on that purported inherent power to grant the Committee's petition. *Id.*

On appeal, every judge of our Court recused, so the Chief Justice of the United States designated three judges from sister circuits to serve as a panel to hear the appeal. *Id.* at 1265 n.3. That special panel affirmed. *Id.* at 1275. It decided that the "district court's belief that it had inherent power beyond the literal wording of Rule 6(e) [was] amply supported." *Id.* at 1268. And, it concluded "special circumstances" existed due to the nature of the judicial investigation and the breadth of the Committee's authorizing statute. *Id.* at 1268–69.

In reaching its decision, the panel equivocated about whether the disclosure might fall within the exception for disclosures made "preliminarily to or in

33

connection with a *judicial proceeding*." *Id.* at 1271 (quoting Fed. R. Crim. P. 6(e)(3)(E)(i)). The panel explained that the proceeding before the Eleventh Circuit Judicial Council and its investigatory Committee was plainly a "judicial inquiry" based on the composition of the Council and Committee and the statutory protections afforded the accused. *Id.* at 1271–72. But it doubted whether the proceeding satisfied the definition of "judicial proceeding" first articulated by Judge Learned Hand. *Id.* ("[A] judicial proceeding . . . includes any proceeding determinable by a court." (quoting *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958)). In the end, the panel affirmed the disclosure in part because the proceeding was at least "closely akin" to a judicial proceeding, even if it was not "a judicial proceeding in the strict legal sense" of the term. *Id.* at 1272.

After a three-year investigation, which included "hearing testimony from over 100 witnesses and receiving approximately 2800 exhibits," the Committee concluded in a report to the Judicial Council that Hastings solicited a monetary bribe, committed perjury, and tampered with evidence. Alan I. Baron, *The Curious Case of Alcee Hastings*, 19 Nova L. Rev. 873, 874 (1995); *see also The Impeachment Trial*, *supra*. The Judicial Council then referred the complaint to the Judicial Conference of the United States, which "concurred in the Council's assessment that . . . impeachment may be warranted" and "certified this

34

determination to the House of Representatives." *Hastings v. Judicial Conference of U.S.*, 829 F.2d 91, 93 (D.C. Cir. 1987).

The House approved 17 articles of impeachment, and the Senate convicted Hastings on 8 articles. *The Impeachment Trial*, *supra.* President pro tempore Robert C. Byrd ordered Hastings removed from office but did not disqualify Hastings from holding future office. *Id.* Indeed, Hastings currently serves as a United States Representative from Florida. *Id.*

In my view, the *Hastings* panel had no reason to doubt whether the judicial-proceeding exception applied. The disclosure of the grand jury records was plainly "in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). That is, *Hastings* reached the right result, even if for the wrong reason.

Consider first the ordinary meaning of the term "judicial proceeding." When Rule 6(e)(3)(E)(i) was adopted, Black's Law Dictionary defined "judicial proceeding" as "any proceeding wherein judicial action is invoked and taken." *Judicial Proceeding*, *Black's Law Dictionary* (4th ed. 1951). It in turn defined "judicial action" to include "the investigation and determination of . . . facts" "[w]hen an inferior officer or board is charged with an administrative act, the performance of which depends upon and requires the existence or ascertainment of facts." *Judicial Action*, *Black's Law Dictionary* (4th ed. 1951) ("An adjudication upon rights of parties who in general appear or are brought before tribunal by

35

notice or process, and upon whose claims some decision or judgment is rendered. . . . Action of a court upon a cause, by hearing it, and determining what shall be adjudged or decreed between the parties, and with which is the right of the case."); *see also Judicial Proceeding*, *Black's Law Dictionary* (11th ed. 2019) ("Any court proceeding; any proceeding initiated to procure an order or decree, whether in law or in equity."). Indeed, courts have long given "[t]he term judicial proceeding . . . a broad interpretation." *In re Sealed Motion*, 880 F.2d 1367, 1379–80 (D.C. Cir. 1989) (collecting cases); *see also In re In re Comm. on the Judiciary, U.S. House of Representatives*, No. 19-5288, 2020 WL 1149883, at \*1, 5 (D.C. Cir. Mar. 10, 2020) (citing *In re Sealed Motion* to support conclusion that an impeachment proceeding qualifies as a "judicial proceeding" within the meaning of Rule 6(e)(3)(E)(i)). Predating the passage of Rule 6, some courts defined "judicial proceedings" "as proceedings before a court or a judge." *Lybrand v. The State Co.*, 184 S.E. 580, 583 (S.C. 1936); *see also Campbell v. N.Y. Evening Post, Inc.*, 157 N.E. 153, 155 (N.Y. 1927). And soon after the passage of Rule 6, courts continued to explain that "[t]he term judicial proceeding is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power." *Richeson v. Kessler*, 255 P.2d 707, 709 (Idaho 1953); *accord Jarman v. Offutt*, 80 S.E.2d 248, 251 (N.C. 1954); *Quasi Judicial*, *Black's Law Dictionary* (4th ed. 1951) ("A term applied to the action,

36

discretion, etc., of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.").

Consider next the Judicial Conduct and Disability Act of 1980, which governed the complaint against Hastings. The Act required the chief judge of each circuit to form a Judicial Council to oversee the administration of justice within the circuit, including the review of ethics complaints against judges. *See* 28 U.S.C. §§ 332(a)(1), (d), 372(c)(6) (1982). The Judicial Council consisted solely of Article III judges who were statutorily "authorized to hold hearings, to take sworn testimony, and to issue subpoenas." *Id.* § 332 (a)(4), (d)(1). The Act required the chief judge of a circuit where a complaint against a judge was filed to review the complaint and take one of three actions. He could by "written order stating his reasons" either "dismiss the complaint" or "conclude the proceeding." *Id.* § 372(c)(3). Both the complainant and the accused judge could petition the Judicial Council for review of that decision if desired. *Id.* § 372(c)(10). Otherwise, the Act required the chief judge to create a special committee, again composed of only federal judges, to investigate the complaint. *Id.* § 372(c)(4). The Committee then conducted as "extensive" an investigation "as it consider[ed] necessary" and, like the Judicial Council, had full subpoena powers. *Id.* § 372(c)(5), (c)(9)(A).

37

The Act provided rights to the accused judge and complainant and required specific procedures for every investigation. The accused judge was entitled to receive written notice of the investigation, to appear in person or by counsel before the Committee, to submit written briefing, "to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, [and] to cross-examine witnesses." *Id.* § 372(c)(4)(C), (c)(11). A complainant also was entitled to appear before the Committee if he "could offer substantial information." *Id.* § 372(c)(11)(C). The statute provided for mileage allowance and witness fees paid out of the funds appropriated for the courts and commensurate with the rate provided for witnesses appearing in federal court. 28 U.S.C. § 604(h)(1) (1982); *id.* § 1821. After the Committee completed its investigation, it was required to draft a report containing "the findings of the investigation and the committee's recommendations for necessary and appropriate action." *Id.* § 372(c)(5). The Committee then forwarded its report to the Judicial Council. *Id.*

The Judicial Council acted as the decisionmaker on the complaint. It reviewed the Committee's report and recommendation, and it could also conduct additional investigation, including holding hearings. *Id.* §§ 332(d)(1), 372(c)(6)(A). The Act then empowered the Judicial Council to take several different actions, including "censuring or reprimanding" the accused judge and certifying the matter to the Judicial Conference to determine whether the judge

38

should be referred to Congress for impeachment. *Id.* at § 372(c)(6), (c)(7). Any "written order to implement any action . . . by a judicial council . . . [had to] be made available to the public through the appropriate clerk's office of the court of appeals." *Id.* § 372(c)(15). And ordinarily "each such order" was "accompanied by written reasons." *Id.* In any event, the Judicial Council was required to provide "written notice" of any decision to both the complainant and the accused judge. *Id.* § 372(c)(6)(C), (c)(7)(C). Any complainant or judge "aggrieved by" the action could petition for review by the Judicial Conference of the United States, *id.* § 372(c)(10), which was composed of the Chief Justice, the chief judge of each circuit, and one district judge of each circuit, *id.* § 331. In sum, the proceedings included the taking of evidence and ordinarily culminated in a publicly available written order that affected the rights of the accused judge and that was appealable to the Judicial Conference.

The ordinary meaning of "judicial proceeding" plainly included the process required by the Judicial Conduct and Disability Act. Once a complaint was forwarded to a special investigating committee, federal judges had to investigate, preside, find facts, and issue orders that affected the accused's rights. *See Lybrand*, 184 S.E. at 583 (defining "judicial proceedings" "as proceedings before a court or a judge"); *Campbell*, 157 N.E. at 155 (same); *Richeson*, 255 P.2d at 709 (defining a "judicial proceeding" as "every proceeding of a judicial nature before a court or

39

official clothed with judicial or quasi judicial power"); *Jarman*, 80 S.E.2d at 251 (same). The accused judge was afforded the opportunity to present evidence and argument. The complainant and the accused judge could petition for review of the Judicial Council's order, which was ordinarily public and accompanied by written reasons. *See Judicial Action*, *Black's Law Dictionary* (4th ed. 1951) ("An adjudication upon rights of parties who in general appear or are brought before tribunal by notice or process, and upon whose claims some decision or judgment is rendered. . . . Action of a court upon a cause, by hearing it . . . ."). So the misconduct proceedings in *Hastings* bore all the hallmarks of a "judicial proceeding."

The definition provided by Judge Hand in *Doe* also covered the proceeding in *Hastings*, despite the special panel's doubts. *See Hastings*, 735 F.2d at 1271. Judge Hand defined "judicial proceeding" as including "any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime." *Doe*, 255 F.2d at 120. Judge Hand stressed that a narrower interpretation of "judicial proceeding" "would not only be in the teeth of the language employed, but would defeat any rational purpose that can be imputed to" the judicial-proceeding exception of Rule 6. *Id.* The Judicial Council, composed of

40

federal judges, is "[a]n organ of the government, belonging to the judicial department, whose function is the application of the laws to controversies brought before it and the public administration of justice." *Court*, *Black's Law Dictionary* (4th ed. 1951). And the purpose of review of the complaint by the Judicial Council was to assure Hastings had not "engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts" or in violation of either the Constitution or the Code of Judicial Conduct. *See* 28 U.S.C. § 372(c)(1), (c)(7)(B)(i); *Hastings*, 735 F.2d at 1263. So that "proceeding determinable by a court ha[d] for its object the compliance of" judges with "standards imposed . . . in the public interest." *Doe*, 255 F.2d at 120.

The proceeding in *Hastings* also qualified as a "judicial proceeding" under Supreme Court precedent. The Supreme Court has explained that "judicial proceedings" are proceedings that call upon a court "to investigate, declare, and enforce 'liabilities as they [stand] on present or past facts and under laws supposed already to exist.'" *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 479 (1983) (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)). The adjudication of a "present right" is "the essence of a judicial proceeding." *Id.* at 481. "The form of the proceeding is not significant" in evaluating whether a proceeding is judicial. *In re Summers*, 325 U.S. 561, 567 (1945). "It is the nature and effect which is controlling." *Id.* Indeed, the Court found a state supreme

41

court's proceeding on a bar petition "judicial," even though the state court had "not treated [the proceeding] as judicial" and its clerk had not "enter[ed] [the proceeding] in the file, on a docket, or on a judgment roll." *Id.* at 563, 567. That the state court considered the petition "on its merits" and "passed an order which [was] validated by the signature of the presiding officer" sufficed to make the proceeding "judicial." *Id.* at 567–68. Similarly, the Court found a D.C. Circuit proceeding on a bar petition "judicial" even though the petitioner failed to "cite case authority" or "make any explicitly legal contentions." *Feldman*, 460 U.S. at 481. The D.C. Circuit "consider[ed] policy and equitable arguments" in evaluating the petition, which is "essentially [a] judicial inquir[y]." *Id.*

The process in *Hastings* offered "the essence of a judicial proceeding" despite the fact that it did not "assume the form commonly associated with judicial proceedings." *Id.* at 481–82. When reviewing the complaint, the Council was required to consider policy, the Code of Judicial Conduct, and the "good Behaviour" requirement of Article III, U.S. Const. art III, § 1. That is, it was required to evaluate the complaint "on [the] merits," *Summers*, 325 U.S. at 567, and "on present or past facts and under laws [or policies] supposed already to exist," *Feldman*, 460 U.S. at 479 (internal quotation marks omitted). The Council was then required to issue an order on the complaint that would affect Hastings' "present right[s]," *id.*, by possibly requesting he voluntarily retire, temporarily

42

ordering that no other cases be assigned to him, censuring or reprimanding him, or recommending him to the Judicial Conference for impeachment consideration. 28 U.S.C. § 372(c)(6)(B), (c)(7)(B). And because the disclosure of the grand jury materials in *Hastings* was for use in the misconduct proceeding, the disclosure was plainly "in connection with a judicial proceeding." *United States v. Baggott*, 463 U.S. 476, 479–80 (1983) (approving the "sensibl[e] understand[ing of] the term 'in connection with,' [as] refer[ring] to a judicial proceeding already pending" where "the primary purpose of disclosure is . . . to assist in . . . conduct[ing] a judicial proceeding").

Our sister circuit has concluded that certain proceedings by the Fifth Circuit Judicial Council are "judicial in nature." *In re McBryde*, 117 F.3d 208, 221 (5th Cir. 1997). In that case, the Chief Judge of the Northern District of Texas reassigned two cases from another district judge to himself. *Id.* at 215. That district judge disagreed with the reassignment and requested review by the Fifth Circuit Judicial Council by filing a complaint under the Judicial Conduct and Disability Act of 1980—the same proceedings as those initiated in *Hastings*. *Id.* at 217, 227. The Chief Judge of the Fifth Circuit referred the matter to a special investigatory committee, which held a hearing, heard testimony, and took evidence. *Id.* at 217. After the committee forwarded its report and recommendation, the Judicial Council concluded the reassignments were warranted and issued an order reassigning the

43

cases. *Id.* The district judge petitioned the Fifth Circuit for a writ of mandamus preventing the reassignment. *Id.* at 219. The Fifth Circuit was then confronted with the question whether it could issue a preemptory writ to the Judicial Council. *Id.* It examined whether the Judicial Council should be viewed "as an administrative body subservient to the judiciary," which would then allow it to review the order on mandamus. *Id.* at 220.

The Fifth Circuit acknowledged that the Judicial Council acts in an administrative capacity in some circumstances but concluded that "it acted as a court in this case." *Id.* at 221 (citing *Feldman*, 460 U.S. at 477). That the Judicial Council took sworn testimony, examined records, and issued its order "because of alleged misconduct," supported that these proceedings were "judicial in nature." *Id.* Because the proceeding was not "administrative," it could not issue a writ to the Judicial Council. *Id.* (stopping short of definitively calling the Judicial Council a "judicial body" because that question only mattered if the parties sought relief from the Supreme Court); *cf. Chandler v. Judicial Council of Tenth Cir. of the U.S.*, 398 U.S. 74, 102–03 (1970) (Harlan, J., concurring) ("[A]t least in the issuance of orders to district judges to regulate the exercise of their official duties, the Judicial Council acts as a judicial tribunal for purposes of this Court's appellate jurisdiction under Article III. . . . [There is] no doubt that the Councils' architects

44

regarded the authority granted the Councils as closely bound up with the process of judging itself.").

Several of our sister circuits' decisions that attorney disciplinary proceedings can be "judicial proceedings" within the meaning of Rule 6(e)(3)(E)(i) also support the result in *Hastings*. So long as there is substantial judicial involvement in the process, like the disciplinary proceedings being held before a judicial tribunal, our sister circuits have concluded that these disciplinary proceedings are "preliminarily to or in connection with a judicial proceeding." *See In re Grand Jury 89-4-72*, 932 F.2d 481, 485–86 (6th Cir. 1991); *In re Fed. Grand Jury Proceedings*, 760 F.2d 436, 438–39 (2d Cir. 1985); *In re Barker*, 741 F.2d 250, 254–55 (9th Cir. 1984); *United States v. Bates*, 627 F.2d 349, 351 (D.C. Cir. 1980); *Doe*, 255 F.2d at 120. We too have said in dicta that we agree that "proceedings to discipline attorneys where bar committees act as an arm of the court are part of judicial proceedings because this function has been assigned to the judiciary from time immemorial." *In re J. Ray McDermott & Co.*, 622 F.2d 166, 170–71 (5th Cir. 1980) (holding disclosure of grand jury records to the Federal Energy Regulatory Commission impermissible because the hearings before the Commission were not "closely tied to" a judicial proceeding).

In short, there is no reason to distinguish judicial disciplinary proceedings from those of attorney disciplinary proceedings or from the decision in *McBryde*

45

calling these proceedings "judicial in nature." The disclosure of grand jury

documents in *Hastings* was plainly "in connection with a judicial proceeding," so

the result in *Hastings*, although not its reasoning, was right.

JORDAN, Circuit Judge, concurring in the judgment:

This is a difficult case, as illustrated by the circuit split on the issue. I agree with the court that the better view is that the exceptions set out in Rule 6(e) to the general requirement of grand jury secrecy are exclusive. *See Carlson v. United States*, 837 F.3d 753, 769–70 (7th Cir. 2016) (Sykes, J., dissenting); *McKeever v. Barr*, 920 F.3d 842, 844–49 (D.C. Cir. 2019). "Inherent authority" is not available to create additional exceptions because "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (citations omitted). I therefore concur in the judgment.

I write separately for two reasons. First, it seems to me that the concept of grand jury secrecy is not as neat as the court suggests. Second, given the circuit split, I encourage the Judicial Conference's Advisory Committee on Criminal Rules to address whether Rule 6(e) should be amended to permit the disclosure of grand jury materials for matters of exceptional historical significance.

\* \* \* \* \* \* \*

As the court recognizes, the rule of grand jury secrecy is firmly entrenched in our criminal justice system. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979). The court identifies five oft-cited reasons animating the need for secrecy: (1) to prevent the escape of the accused whose indictment might

47

be contemplated; (2) to ensure the utmost freedom to grand jury deliberations and prevent tampering with jurors; (3) to prevent perjury or tampering with witnesses; (4) to encourage free sharing of information from people who may have knowledge of a crime; and (5) to protect an innocent accused who is exonerated.  See Maj. Op. at 10–11 (quoting Douglas Oil, 441 U.S. at 219 n.10). This list—which was "summarized" from decades of case law and treatises on the subject—glosses over the evolution in thinking about the reasons for grand jury secrecy and does not tell the whole story about the federal judiciary's approach to secrecy before the adoption of the Federal Rules of Criminal Procedure.

From its inception in England, the rule of secrecy appears to have functioned to secure the grand jury's independence from the crown.  *See* Richard Calkins, *The Fading Myth of Grand Jury Secrecy*, 1 J. Marshall J. Prac. & Proc. 18, 18–19 (1967). As the grand jury continued to evolve in England, the secrecy component became seen as a means to prevent escape by suspected criminals.  *See* George Edwards, Jr., The Grand Jury 116 (1906) [Legal Classics Library ed. 2003].  *See also* Mark Kadish, *Behind the Locked Doors of an American Grand Jury: Its History, its Secrecy, and its Process*, 24 Fl. St. U. L. Rev. 1, 13 (1996) (explaining that, during the grand jury's beginnings in England, secrecy was part of the process in order to prevent escape by offenders).  In the early days of the republic, American and English commentators alike held "many diverse views" regarding the reasons for

48

secrecy, while others attacked these views and the need for grand jury secrecy more generally. *See* Edwards, The Grand Jury, at 116 & nn.80–83. One late 1800s American commentator focused on two prominent reasons for secrecy, while criticizing the concept: to give the government a proper advantage in conducting its investigation, and to provide grand jurors freedom from fear or restraint. *See* Eugene Stevenson, *Our Grand Jury System*, 8 Crim. L. Mag. & Rep. 711, 720 (1886). By the early twentieth century, many courts had already begun to recite the full set of traditional justifications for secrecy later set out in *Douglas Oil. See, e.g., Schmidt v. United States*, 115 F.2d 394, 396–97 (6th Cir. 1940) (citing *United States v. Amazon Chem. Corp., D.C.*, 55 F.2d 254, 261 (D. Md. 1931)).

Whatever the reasons for secrecy in the pre-Rules era, when the grand jury's functions had concluded courts had the authority to disclose materials "where the ends of justice require[d] it." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940) (citation omitted). Courts facing the question of whether to disclose grand jury materials looked to the specific circumstances before them to determine whether the need for secrecy had dissipated. For example, several pre-Rules cases concluded that the need for secrecy was lessened after the grand jury had made its presentment and indictment, the indictment had been made public, the grand jury had been discharged, and/or the accused was in custody. *See Atwell v. United States*, 162 F. 97, 99–101 (4th Cir. 1908) (holding that the rule of secrecy did not preclude

49

a grand juror, post-indictment, from disclosing evidence presented to the grand jury); *Metzler v. United States*, 64 F.2d 206 (9th Cir. 1923) (allowing an assistant U.S. attorney present at the grand jury to read in evidence at trial from shorthand notes taken at the proceedings because "[a]fter the indictment has been found and made public and the defendants apprehended, the policy of the law does not require the same secrecy as before") (citations omitted); *In re Grand Jury Proceedings*, 4 F. Supp. 283, 285 (E.D. Pa. 1933) ("The fact that the grand jury has adjourned and been discharged has often been considered as one reason for abandoning secrecy as to its deliberations."). In these cases, concerns about an escaping offender or tampering with jurors and witnesses were no longer at issue.

Likewise, other pre-Rules cases involving challenges to the evidence supporting an indictment concluded that it would be proper to relax the rule of secrecy to prevent abuses in the grand jury proceeding itself. *See Murdick v. United States*, 15 F.2d 965, 967–68 (8th Cir. 1926) ("There is no divinity surrounding [the grand jury's] action, and the court has the right to go behind the secrecy imposed upon a grand jury as to its proceedings, where the interests of justice demand it."); *United States v. Byoir*, 147 F.2d 336, 336–37 (5th Cir. 1945) (acknowledging that a court "had discretionary authority to permit disclosure of what happened before the grand jury when necessary to advance the cause of justice," and affirming an order allowing the defendant to examine grand jury minutes related to evidence as to him,

50

and relieving the stenographer of his secrecy obligation to allow him to testify before the court); *McKinney v. United States*, 199 F. 25, 27 (8th Cir. 1912) (noting that "doubtless in extreme instances a court may do what is needful to prevent clear injustice or an abuse of judicial process" at the grand jury stage). Indictments had already been returned in these cases, so again concerns such as protecting innocent and/or exonerated accused persons were naturally not relevant and did not support maintaining the veil of secrecy.

Consistent with this circumstance-specific approach, even when courts in the pre-Rules era determined that disclosure was appropriate, they recognized distinctions among the types of materials sought to be obtained, and the policy reasons to afford greater secrecy to some kinds of records and information (e.g., juror discussions and votes). In the words of one court, "infinite secrecy" might be desired for discussions and votes of individual jurors to protect them from the "the malice and consequent injury growing out of his neighbor's knowledge that he had advocated or voted for a presentment against him." *Atwell*, 162 F. at 100. *See also United States v. Farrington*, 5 F. 343, 347 (N.D.N.Y. 1881) ("[W]henever it becomes essential to ascertain what has transpired before a grand jury it may be shown, no matter by whom; and the only limitation is that it may not be shown how the individual jurors voted or what they said during their investigations . . . because this cannot serve any of the purposes of justice.") (citations omitted); *McKinney*, 199

51

F. at 38 (Sanborn, J., dissenting) ("[T]he modern and the true rule is that the veil of secrecy may be removed from all the proceedings before the grand jury, except the votes and sayings of the grand jurors . . . .") (citations omitted).

The guidepost for disclosure in each of these pre-Rules cases was only whether the ends of justice would be furthered. *See Metzler*, 64 F.2d at 206; *In re Grand Jury Proceedings*, 4 F. Supp. at 285. At least one circuit court—somewhat inverting the default—said that secrecy should be maintained "[t]o the full extent necessary to fulfill the ends of justice, and no further." *Atwell*, 162 F. at 100. This broad standard gave courts substantial discretion to decide whether disclosure was appropriate after weighing the need for secrecy against competing concerns.

\* \* \* \* \* \* \*

In 2012, the Advisory Committee on Criminal Rules decided not to proceed with a proposal from then–Attorney General Eric Holder to amend to Rule 6(e) to allow disclosure for historically significant grand jury materials. *See* Judicial Conference Committee on Rules of Practice and Procedure Minutes, June 11–12, 2012, at 44. *See also* Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure, Sept. 2012, at 32–33. The proposal was not rejected out of the concern the majority hints at—that it would be difficult to determine when something was "so 'historically significant' that the interest in disclosure outweighs the interest of that the grand jurors, witnesses, and future

52

generations, among others, have in maintaining the secrecy of the proceedings." *See* Maj. Op. 19 n.9.  On the contrary, the Advisory Committee believed that amendment of Rule 6 "would be premature" and that "district judges had reasonably resolved" applications for disclosure on these grounds.  *See* Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure, Sept. 2012, at 33.[1]

Although the Advisory Committee deemed Attorney General Holder's proposed amendment unnecessary, its determination implicitly contemplated that a historical importance exception might be ripe for consideration at some future date. Given the current circuit split and the Supreme Court's recent denial of certiorari on the issue, *see McKeever v. Barr*, No. 19-307, 2020 WL 283746 (U.S. Jan. 21, 2020), it appears that day is upon us.  *See id.* at *1 (Breyer, J., respecting the denial of certiorari) (noting that this is an "important question" that the Rules Committee "can and should revisit").  I therefore urge the Advisory Committee on Criminal Rules to

---

[1] A copy of Attorney General Holder's proposal is attached as an appendix to the Court's opinion.  The proposed amendment would permit disclosure of grand jury materials of exceptional historical significance that are at least 30 years old and that have become part of the permanent records of the National Archives under 44 U.S.C. § 2107.  *See* Letter from Attorney General Eric Holder to Judge Reena Raggi, Chair of the Judicial Conference's Advisory Committee on Criminal Rules, Oct. 18, 2011, at 6–8, 6 n.3.  As to cases at least 30 years old, the proposed amendment would authorize district courts to determine whether disclosure is warranted on a case-by-case basis.  *See id.* at 6–8.  Records 75 years or older would become available to the public under the same standards applicable to other records in the National Archives.  *See id.* at 6, 8 (citation omitted).

consider whether Rule 6(e) should be amended to permit the disclosure of grand jury

materials for matters of exceptional historical significance and, if so, under what

circumstances.[2]

*\*\*\*\*\*\**

With these thoughts, I concur in the judgment.

---

[2] Ms. Pitch's motion for leave to file a supplemental brief suggests that an amendment to Rule 6 indeed may be the only way of obtaining the grand jury records. Congress has provided a means to access materials like the Moore's Ford Lynching grand jury records in the Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, 132 Stat. 5489 (2019) (codified at 44 U.S.C. § 2107 note). But according to Ms. Pitch, apparently there have not been any congressional appropriations. Nor have there been any appointments to the Review Board charged with evaluating petitions under the Act.

WILSON, Circuit Judge, joined by MARTIN, as to Parts II and III, and JILL PRYOR, Circuit Judges, dissenting:

For nearly 40 years, our precedent has been consistent with both history and the text of Rule 6(e).  It has been the law in this Circuit that district courts have inherent authority to order the disclosure of sealed grand jury materials outside of Rule 6(e)'s list of enumerated exceptions.  We previously stated:

> Although Rule 6(e)(3) enumerates the exceptions to the traditional rule of grand jury secrecy, the Supreme Court and this Court have recognized that the district courts have inherent power beyond the literal wording of Rule 6(e)(3) to disclose grand jury material and that Rule 6(e)(3) is but declaratory of that authority.

*United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004) (citing

*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398–99 (1959)).

The fountainhead for this precedent in our Circuit is *In re Petition to Inspect and Copy Grand Jury Materials,* where we held that "a petition by a judicial investigating committee presents one of the occasions when a district court may act outside the strict bounds of Rule 6(e), in reliance upon its historic supervisory power."  735 F.2d 1261, 1273 (11th Cir. 1984) [hereinafter *Hastings*].[1]  Our reasoning in *Hastings* has been adopted by two

---

[1] Before our decision in *Hastings*, the Second Circuit reached the same conclusion in *In re Biaggi*, 478 F.2d 489, 490–94 (2d Cir. 1973) (holding that—despite Rule 6(e)'s enumerated exceptions—grand jury secrecy is not absolute and therefore, "under the special circumstances" of that case, disclosure was to the public's benefit and would not undermine the values protected by the "rule of secrecy").

55

other circuits. *See, e.g.*, *Carlson v. United States*, 837 F.3d 753, 766 (7th Cir. 2016); *In re Petition of Craig*, 131 F.3d 99, 103 (2d Cir. 1997).[2]

Today, we do an about-face and hold that "Rule 6(e) is exhaustive." Majority Op. at 4, 31. Now, "[d]istrict courts may only authorize the disclosure of grand jury materials if one of the five exceptions listed in Rule 6(e)(3)(E) applies; they do not possess the inherent, supervisory authority to order the release of grand jury records in instances not covered by the rule." *Id.* at 30.

I dissent for two reasons.

## I.

First, this case does not justify an abrupt departure from several decades of settled Eleventh Circuit precedent, especially to overrule a district judge's well-reasoned decision relying on that precedent.

"[N]o judicial system could do society's work if it eyed each issue afresh in every case that raised it." *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Steinberg*, 32 F.3d 269, 272 (7th Cir. 1994). "Indeed, the

---

[2] Two additional circuits—the First and the Tenth—have acknowledged that district courts may release grand jury materials outside Rule 6(e)'s enumerated exceptions. *See In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005) (holding that Rule 6(e)'s "phrasing can, and should, accommodate rare exceptions premised on inherent judicial power" and endorsing our holding in *Aisenberg*); *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1178–79 (10th Cir. 2006) (recognizing that there is "substantial support" for the notion that courts may order disclosure using their "inherent authority," even when Rule 6(e) does not apply).

very concept of the rule of law underlying our own Constitution requires such continuity over time that a respect for precedent is, by definition, indispensable." *United States v. Aman*, 31 F.3d 550, 554 (7th Cir. 1994).

That is not to say that this Court lacks the authority to revisit prior precedent in a case of exceptional importance when the "prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason doomed." *Id*. But, there is a high bar for en banc review. It "is not favored," and will ordinarily not be conducted unless it is necessary to resolve an intra-Circuit split or "involves a question of exceptional importance." Fed. R. App. P. 35(a). This appeal falls into neither category.

The majority says times have changed, and it interprets the rule differently now. But our precedent should not zigzag back and forth based on the outcome of each case. Moreover, release of grand jury materials is not an everyday occurrence—before this case, district courts in the Eleventh Circuit had only unsealed grand jury transcripts, over an objection, twice since the Court was established in 1981.[3] *See Aisenberg*, 358 F.3d at 1331; *Hastings*, 735 F.2d at 1264–65, 1275. And if a district judge abuses that authority, there

---

[3] Moreover, the Department of Justice has admitted that, nationwide, the use of inherent authority to disclose grand jury records has been "rare." *See* Advisory Comm. on Crim. Rules, Agenda Book 223 (Apr. 2012).

is a safeguard—the exercise of that discretion is subject to our review. *See Aisenberg*, 358 F.3d at 1350–52.

In short, while the underlying circumstances in this case were exceptional, the underlying opinion was not.  Therefore, I would maintain our long-standing precedent permitting district judges to exercise their inherent supervisory authority to unseal grand jury records "in an appropriate factual situation." *See Hastings*, 735 F.2d at 1272.

## II.

More importantly, I dissent because we correctly interpreted the text of Rule 6(e) the first time around, and the second.  I advance this argument in three parts.  First, our decision in *Hastings* was in line with the common-law tradition of courts exercising their inherent authority to disclose grand jury materials in circumstances both "mundane" and "weighty." *See Carlson*, 837 F.3d at 762.  Second, *Hastings* was in harmony with the Federal Rules of Criminal Procedure because Rule 6(e) did not eliminate the inherent authority of district courts to disclose grand jury materials in extraordinary circumstances.  And third, Rule 6(e)'s history further demonstrates that the rule did not and does not abrogate district courts' authority to disclose grand jury materials.

58

A.

District courts have limited inherent power to supervise grand jury proceedings; the existence of that power is supported by its history and use. Before the advent of the Federal Rules of Criminal Procedure, there was no question as to whether district courts had discretion to relax the traditional rule of secrecy.  *See Schmidt v. United States*, 115 F.2d 394, 397 (6th Cir. 1940).  The Supreme Court said as much: "Grand jury testimony is ordinarily confidential.  But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233–34 (1940) (citation omitted).

It is true that grand juries are functionally independent from district courts, but they remain "an arm of the court," *Levine v. United States*, 362 U.S. 610, 617 (1960), and operate "under general instructions from the court[s] to which [they are] attached," *Cobbledick v. United States*, 309 U.S. 323, 327 (1940); *see also In re Grand Jury Subpoena Duces Tecum*, 797 F.2d 676, 680 n.4 (8th Cir. 1986) (stating that the grand jury "acts under the inherent supervision of the court").[4]  For

---

[4] I use the phrase "functionally independent" advisedly, because the Supreme Court has recognized that the grand jury has a degree of independence from courts.  However, the Court has not decided the extent of that independence.  *Compare Levine*, 362 U.S. at 617 ("The grand jury is an arm of the court . . . . The Constitution itself makes the grand jury a part of the judicial process.") (citation omitted) (internal quotation mark omitted), *with United States v. Williams*, 504 U.S. 36, 47 (1992) ("Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length.").  As I explain *infra*, this functional

example, though the grand jury "must initiate prosecution for . . . federal crimes," it "does so under general instructions from the court," and "from time to time, it reports its findings" to the court. *Cobbledick*, 309 U.S. at 327. Furthermore, to subpoena a witness, a grand jury may appeal "to the court under whose aegis the grand jury sits." *Levine*, 362 U.S. at 617. And several courts have recognized that grand jury records are court records. *See Carlson*, 837 F.3d at 758 ("Because the grand jury is part of the judicial process, its minutes and transcripts are necessarily records of the court." (citation omitted) (internal quotation marks omitted)); *Standley v. Dep't of Justice*, 835 F.2d 216, 218 (9th Cir. 1987) (holding that "[g]rand jury materials are records of the district court"); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 31 (2d Cir. 1981) (same); *United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979) (same); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 685 (1958) (Whittaker, J., concurring).

To be sure, a court's inherent supervisory power over grand juries is "very limited" and "not remotely comparable to the power" that a court maintains over its own proceedings. *Williams*, 504 U.S. at 50. Grand juries' functional independence prevents "judicial reshaping of the grand jury institution." *Id.*

---

independence means, at a minimum, that courts' inherent supervisory power over grand juries is limited in nature. *See Williams*, 504 U.S. at 50.

60

Therefore, courts' supervisory power is used to "preserve or enhance the traditional functioning of the grand jury." *Carlson*, 837 F.3d at 762 (internal quotation mark omitted).

Within the inherent supervisory power of district courts is "the discretion to determine when otherwise secret grand-jury materials may be disclosed." *Id.* Though grand juries are subject to a general rule of secrecy, that secrecy has never been absolute. *See* Michael A. Foster, Cong. Research Serv., R45456, *Federal Grand Jury Secrecy: Legal Principles and Implications for Congressional Oversight* 5 (2019) (stating that the general rule of grand jury secrecy is "not unyielding"). Instead, the rule of secrecy has been relaxed and disclosure permitted "whenever the interest of justice requires," and that decision "rests largely within the discretion of the court." *In re Grand Jury Proceedings*, 4 F. Supp. 283, 284 (E.D. Pa. 1933); *see also United States v. Farrington*, 5 F. 343, 346 (N.D.N.Y. 1881) (stating that "[i]t is only practicable" for courts "to exercise a salutary supervision over the proceedings of a grand jury" by "removing the veil of secrecy whenever evidence of what has transpired before them becomes necessary to protect public or private rights"). This is because grand jury secrecy is derived from common law, and like any common-law fixture, it has changed in both its

61

scope and purpose.[5]  *See Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979) (citing Richard M. Calkins, *Grand Jury Secrecy*, 63 Mich. L. Rev. 455, 457 (1965)).

This history is crucial to our understanding of Rule 6(e) and its effects on the courts' inherent power to disclose grand jury materials.  It demonstrates that Rule 6(e) is "not the true source of the district court's power with respect to grand jury records, but rather is a codification of standards pertaining to the scope of the power entrusted to the discretion of the district court."  *Hastings*, 735 F.2d at 1268.  In other words, Rule 6(e) is only "declaratory" of the traditional common-law rule that the disclosure of grand jury materials is "committed to the discretion of the trial judge."  *Pittsburgh Plate Glass Co.*, 360 U.S. at 399.

The majority ignores this history and examines Rule 6(e) as if it has no backdrop.  But we read rules "against the entire background of existing customs, practices, rights, and obligations" already existing in common law and not expressly displaced by statute.  *See* David L. Shapiro, *Continuity and Change in Statutory Interpretation*, 67 N.Y.U. L. REV. 921, 925 (1992); *see also Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104, 108 (1991) (recognizing that "Congress is understood to legislate against a background of common-law . . .

---

[5] The grand jury and grand jury secrecy are components of our English political heritage that were transplanted into our federal common law.  *See Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979).

principles"). And although district courts' inherent power may be limited by statute and rule, we are not permitted to "lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–32 (1962). Thus, to have displaced that inherent power, Rule 6 would need a "clear[] expression of [that] purpose," *Link*, 370 U.S. at 631–32, or for there to be a contradiction between the power and the rule, *see Dietz v. Bouldin*, 579 U.S. ____, ____, 136 S. Ct. 1885, 1892 (2016). As explained below, Rule 6(e) has neither.

## B.

In statutory (and rule) interpretation, we are expected to hold tight to the words of the law. But the majority flouts that command by discerning a clear expression of exhaustiveness in Rule 6(e) that is not at all evident. The unambiguous words of Rule 6(e) do not clearly demonstrate an intention to abrogate courts' inherent authority to release grand jury materials. Nor do the words of Rule 6(e) conflict with the exercise of that authority.

Rule 6(e)—entitled "Recording and Disclosing the Proceedings"— contains three subparts, of which only two are important in this case: 6(e)(2) (Secrecy) and 6(e)(3) (Exceptions). Rule 6(e)(2)(A) states that "[n]o obligation of secrecy may be imposed on any person except in accordance

63

with Rule 6(e)(2)(B)."  Rule 6(e)(2)(B) provides that "[u]nless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury."  The rule then lists seven types of persons to which secrecy applies: grand jurors, interpreters, court reporters, operators of a recording device, persons who transcribe recorded testimony, attorneys for the government, and persons to whom disclosure was made under either Rule 6(e)(3)(A)(ii) or (iii).  District court judges appear nowhere on this list.

Rule 6(e)(3) provides exceptions to secrecy rules.  Subparts (A), (B), (C), and (D) of that rule describe circumstances in which grand jury materials may be disclosed without court permission.  Subpart (E) describes circumstances in which courts may authorize disclosure.  It says that a "court *may* authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter" under certain circumstances.  Fed. R. Crim. P. 6(e)(3)(E) (emphasis added).  Those circumstances are

> (i) preliminarily to or in connection with a judicial proceeding;
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;
> (iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;
> (iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or

64

foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

(v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

*Id.* Nothing in this language suggests the court's ability to disclose is restricted to *only* these circumstances.

The majority claims that the clause "[u]nless these rules provide otherwise"—which appears only in Rule 6(e)(2)(B)—applies to all of Rule 6(e) and is proof of a clear intent to eliminate a court's inherent power to disclose grand jury materials in all circumstances except those listed in subpart (e)(3)(E). Majority Op. at 15–17. That is a strained interpretation. I cannot think of a basis in statutory interpretation (or any interpretation for that matter) that would allow the majority to copy the exclusivity requirement from subpart (e)(2)(B)—which excludes courts and judges from those who are barred from disclosure—and paste it into subpart (e)(3)(E). *See Carlson*, 837 F.3d at 764. Nor does the majority provide any basis in statutory construction for this interpretation.

Instead, the majority says that the "text and structure" of Rule 6(e) support its interpretation. Majority Op. at 15. But far from offering support for the majority's interpretation, the text and structure of the rule undermine it. In fact, the

text of the rule explicitly prohibits the majority's interpretation: "No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Fed. R. Crim. P. 6(e)(2)(A). And, as the *Carlson* majority noted, the fact that limiting language exists elsewhere in Rule 6(e), but not in (3)(E), proves "that its absence in (3)(E) was intentional." *See* 837 F.3d at 764. Therefore, the right reading is the plain one: the unless-these-rules-provide-otherwise limitation in Rule 6(e)(2)(B) applies only to those listed in (e)(2)(B). Courts and judges are not listed there, so they are unaffected by that provision.

The majority attempts yet another end run around the plain text. It concludes that, given the limited role of courts in grand jury proceedings, the absence of "courts" or "judges" from Rule 6(e)(2)(B) is understandable and "does not mean that the district court has no secrecy obligations with respect to grand jury proceedings." Majority Op. at 22. But that is the right answer to the wrong question. As explained above, there is no doubt that district courts have secrecy obligations under common law. *See supra* at 61. The right question is whether Rule 6(e)(2)(B) clearly alters district court secrecy obligations so that they are absolute in all circumstances except those listed in Rule 6(e)(3). In other words, does Rule 6(e)(2)(B) clearly evince a purpose to eliminate district courts' inherent authority over grand jury materials? *See Link*, 370 U.S. at 631–32. The answer is

66

no. Rule 6(e)(2)(B) does not include courts or judges, so they cannot be constrained by the unless-these-rules-provide-otherwise limitation.

Having stripped the majority's interpretation of its (e)(2)(B) disguise, our focus next turns to Rule 6(e)(3)(E), which explains when the court "may authorize disclosure." Fed. R. Crim. P. 6(e)(3)(E). That language is plainly permissive.[6] "[T]he 'word' may . . . implies some degree of discretion." *See Carlson*, 837 F.3d at 765 (citing *United States v. Rodgers*, 461 U.S. 677, 706 (1983)). And permissive language does not compel the conclusion that it was the purpose of the rule to abrogate the courts' inherent power to disclose grand jury materials. *See Link*, 370 U.S. at 630–32. The rule's text is devoid of terms of exclusivity; it only specifies *some* circumstances in which disclosure is authorized. The rule's drafters used limiting language in other parts of Rule 6 but omitted such language from the only part of the rule that discusses courts. We should view that choice as intentional and not mistaken.

In a sleight of hand, the majority suggests that while the Supreme Court has not squarely addressed the issue in this case, it "has on several occasions suggested

---

[6] Some of our sister circuits that have considered this issue have come to this same conclusion. *See Carlson*, 837 F.3d at 766 ("The text and history of the Rules indicate that Rule 6(e)(3)(E) is permissive, not exclusive, and it does not eliminate the district court's long-standing inherent supervisory authority to make decisions as needed to ensure the proper functioning of a grand jury."); *Craig*, 131 F.3d at 102 ("Although, by delimiting the exceptions to grand jury secrecy, Rule 6(e)(3) governs almost all requests for the release of grand jury records, this court has recognized that there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of the rule.").

that Rule 6(e) is exclusive." Majority Op. at 17. Yet none of the cases it cites, either implicitly or explicitly, analyzed the scope of a district court's inherent authority to disclose grand jury materials. *See Pittsburgh Plate Glass Co.*, 360 U.S. at 396 (holding that a "trial court did not err in refusing to make . . . grand jury testimony available to [defendants] for . . . cross-examination"); *United States v. Baggot*, 463 U.S. 476, 479 (1983) (holding that disclosure for use in a tax audit was not "preliminarily to or in connection with a judicial proceeding" within the meaning of then Rule 6(e)(3)(c)(i), now 6(e)(3)(E)(i)); *Williams*, 504 U.S. at 55 (holding that a district court may not dismiss an otherwise valid indictment on the ground that the government failed to disclose substantial exculpatory evidence to the grand jury).

The majority also complains that this interpretation of Rule 6(e)(3)(E) would make the enumerated exceptions to Rule 6(e) "merely precatory." Majority Op. at 18. Quite the contrary. As the Seventh Circuit explained, it is not unreasonable to infer that the rule's drafters provided a list of frequent invocations to disclose grand jury material, "so that the court knows that no special hesitation is necessary in those circumstances." *See Carlson*, 837 F.3d at 765. That inference is far more reasonable than guessing that the rule's drafters excluded district court judges from the list of persons prevented from disclosing grand jury materials, and yet intended the secrecy requirement to apply to them anyway. Especially given that, as

68

explained further below, "exceptions to the secrecy rule generally have developed through *conformance* of Rule 6 to the 'developments wrought in decisions of the federal courts,' *not vice versa*." *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 286 (S.D.N.Y. 1999) (emphasis added).

Moreover, continuing to recognize district courts' limited inherent authority to release grand jury materials would not "circumvent or conflict with the Federal Rules of Criminal Procedure." *See Carlisle v. United States*, 517 U.S. 416, 426 (1996).  A district court's decision to disclose grand jury materials in extraordinary circumstances would not annul any portion of Rule 6, nor could exercising that authority contradict Rule 6(e)(3)(E)'s permissive language.

For those reasons, it seems plain to me that the rule did not expressly eliminate courts' inherent authority to release grand jury materials.

C.

If the text of Rule 6(e) were not clear enough, the history of the rule and the Advisory Committee Notes also support our instinct in *Hastings*: Rule 6(e) was meant to codify—not "ossify"—the common law.[7]  *See* 735 F.2d at 1269.  Rule 6 was enacted to "continue[] the traditional practice of secrecy on the part of members of the grand jury, *except when the court permits a disclosure*."  Fed. R.

---

[7] "[A]lthough [Advisory Committee Notes] do not foreclose judicial consideration of the Rule's validity and meaning, the construction given by the Committee is of weight." *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (internal quotation mark omitted).

Crim. P. 6 advisory committee's notes to 1944 adoption (emphasis added). In other words, in the first iteration of the rule, the drafters intended for courts to maintain their power to disclose grand jury materials "where the ends of justice require it." *See Socony-Vacuum Oil Co.*, 310 U.S. at 234. The Advisory Committee Notes even cite cases that held that district courts have discretion to relax the rule of secrecy. *See* Fed. R. Crim. P. 6(e) advisory committee's notes to 1944 adoption (citing *Schmidt v. United States*, 115 F.2d 394, 397 (6th Cir. 1940) ("Logically, the responsibility for relaxing the rule of secrecy and of supervising any subsequent inquiry should reside in the court, of which the grand jury is a part and under the general instructions of which it conducted its 'judicial inquiry.' It is a matter which appeals to the discretion of the court when brought to its attention." (citations omitted)); *United States v. Am. Med. Ass'n*, 26 F. Supp. 429, 430 (D.D.C. 1939) (stating that nothing can "release a juror from the oath of secrecy" but "a court acting in a given case [may do so] when in its judgment the ends of justice so require"); *Atwell v. United States*, 162 F. 97, 100–03 (4th Cir. 1908)).

Since the adoption of Rule 6, courts have exercised the authority to order disclosure in a variety of cases not expressly provided for in the rule. And Rule 6(e) has been frequently amended to conform to "subsequent developments wrought in decisions of the federal courts" and not vice versa. *Hastings*, 735 F.2d at 1268; *see Am. Historical Ass'n,* 49 F. Supp. 2d at 286; *In re Kutler*, 800 F. Supp.

70

2d 42, 45–46 (D.D.C. 2011).  Three examples are instructive.  In 1977, the rule was amended to allow disclosure to government personnel who assist prosecutors with the grand jury.  The Advisory Committee Notes explain that change followed a trend of cases allowing this kind of disclosure.  *See* Fed. R. Crim. P. 6(e) advisory committee's notes to 1977 amendment (citing *In re William H. Pflaumer & Sons, Inc.*, 53 F.R.D. 464 (E.D. Pa. 1971)).  Then, in 1983, the rule was further amended to allow disclosure to other federal grand juries.  The Advisory Committee Notes explain that "[e]ven absent a specific provision to that effect, the courts have permitted such disclosure in some circumstances."  *See* Fed. R. Crim. P. 6 advisory committee's notes to 1983 amendment (citing *Socony-Vacuum Oil Co.*, 310 U.S. at 150; *United States v. Garcia*, 420 F.2d 309 (2d Cir. 1970)).  Finally, in 1985, the rule was amended to allow disclosure to state and local government employees, following the example in *In re 1979 Grand Jury Proceedings*, 479 F. Supp. 93 (E.D.N.Y. 1979).  *See* Fed. R. Crim. P. 6 advisory committee's notes to 1985 amendment.

This amendment history underscores that Rule 6(e) was never intended to "strictly confine[]" the instances in which disclosure of grand jury materials is appropriate.  *Hastings*, 735 F.2d at 1268; *see id*. at 1269; *Carlson*, 837 F.3d at 765.  This history demonstrates that the Advisory Committee accepted and adopted these subsequent developments by adding them to the existing list of exceptions.  Had

71

the rule eliminated courts' inherent power to disclose grand jury material beyond the enumerated exceptions, the Advisory Committee would have amended the rule and included a clear expression of that intent.

A recent Advisory Committee action supports this viewpoint. In 2012, the Advisory Committee considered the exact question at issue in this case and reaffirmed that Rule 6(e) is permissive and not exhaustive.[8] In 2011, the Department of Justice proposed an amendment to Rule 6(e) that would have "allow[ed] district courts to permit the disclosure, in appropriate circumstances, of archival grand-jury materials of great historical significance." *See* Advisory Comm. On Crim. Rules, Agenda Book 217 (Apr. 2012); *see generally id.* at 209–271. The Department even put forward the same hobbled argument the majority has: "federal courts have no inherent authority to develop rules that circumvent or conflict with the Federal Rules," and the courts that had applied "historical significance exception[s] to Rule 6(e) threaten[ed] to undermine" the rule. *Id.* at 217. But the Advisory Committee rejected the proposal because it viewed it as unnecessary. The Committee explained, that "in the rare cases where disclosure of historically significant materials had been sought, district judges had reasonably

---

[8] The majority rightly acknowledges that Advisory Committee minutes are different from Advisory Committee Notes and the text of the rule itself, and they cannot be given much weight. I rely on these minutes only to the extent that they demonstrate that learned minds—namely, judges and other legal professionals—also recognize that the inherent authority of district courts to relax grand jury secrecy is unaltered by Rule 6(e).

72

resolved applications by reference to their inherent authority." Advisory Comm. on Crim. Rules, Minutes 7 (Apr. 2012).

\* \* \*

In sum, the majority's view is anti-textual and anti-historical. The text and history of the Rules support the conclusion that Rule 6(e)(3)(E) was not intended to abrogate courts' inherent power to disclose grand jury materials, as the rule remains subject to the common law that preceded it. *See Hastings*, 735 F.2d at 1268. Without a clear expression of the desire to displace courts' inherent power to disclose grand jury materials, the reasonable interpretation of the rule is a permissive one: Rule 6(e) was intended to codify traditional law, not ossify it. *See id.* at 1269. And the exercise of the inherent power to disclose grand jury materials does not conflict with the rule.

## III.

Because the district court had the inherent authority to disclose grand jury materials, I would affirm its decision that the facts in this case present exceptional circumstances justifying the exercise of that authority.[9]

---

[9] I have provided only an abridged analysis of this issue here. For a fuller analysis, including a detailed discussion of the *Craig* factors, see *Pitch v. United States*, 915 F.3d 704, 709–13 (11th Cir. 2019), *reh'g en banc granted and opinion vacated*, 925 F.3d 1224 (11th Cir. 2019).

"[W]hile district courts have inherent authority to act outside Rule 6(e)(3), any inherent disclosure authority is exceedingly narrow." *Aisenberg*, 358 F.3d at 1347. "[C]ourts are not empowered to act outside Rule 6(e) in other than *exceptional circumstances* consonant with the rule's policy and spirit." *Hastings*, 735 F.2d at 1269 (emphasis added). Exceptional circumstances exist when the need for disclosure outweighs the public interest in continued secrecy. *See id.* at 1272–73 (quoting *Douglas Oil*, 441 U.S. at 223 ("[T]he court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and standards announced by this Court.")); *id.* at 1275. And in the proper circumstances, grand jury records on a matter of exceptional historical significance may trigger a district court's inherent authority to disclose them. *See Craig*, 131 F.3d at 106 (outlining a "non-exhaustive list of factors that a trial court might want to consider when confronted with these highly discretionary and fact-sensitive" motions).

Here, the district judge appropriately recognized that the Pitch petition was not a run-of-the-mill Rule 6 petition. The records are more than 70 years old. There are no surviving witnesses or grand jurors. And no one disagrees that the Moore's Ford Lynching is an exceptional historical event, tied to the Civil Rights Movement. For nearly 100 years, mass lynchings were the dual-purpose weapon of the Klan's war for white supremacy: they served to both eradicate large numbers

74

of African Americans and terrorize generations more.  Punctuating that century of terror, the Moore's Ford mass lynching is thought to be the last in our history.  Of course, given the importance of grand jury secrecy, the burden on the petitioner is high in cases like these.  It takes an event so profound in our country's dark past—so demanding of deep study and thought—to overcome that burden.  After balancing the competing interests, it seems obvious to me that this case would meet that burden and that disclosure outweighs the interest in continued secrecy.

*  *  *

To conclude, I would maintain our Circuit's precedent that district courts have an inherent power to disclose grand jury materials.  That power is limited and should be invoked advisedly.  That was done here, and so I would affirm.

ROSENBAUM, Circuit Judge, dissenting:

I agree that the Majority Opinion's reading of Rule 6(e)(2) is the most natural one: Rule 6(e)(2) sets forth a general rule of secrecy, and Rule 6(e)(3) provides the only exceptions to that rule. Maj. Op. at 15–16. But a major problem with that interpretation precludes it from being the correct one: we know for a fact that Congress itself—which, of course, is the branch that adopted Rule 6—does not agree with it. In fact, Congress has enacted recent legislation that depends for its operability on construing Rule 6(e) not to abrogate the courts' common-law inherent power to authorize release of grand-jury materials when appropriate, even in the absence of an articulated exception under Rule 6(e). The Majority Opinion has no answer to this problem.

To show why Rule 6(e) necessarily preserves the courts' common-law inherent authority to permit release of grand-jury materials, Section I of this dissent briefly reviews the origins of Rule 6(e)—the common law. Section II.A then demonstrates that Congress, in legislating against this common-law background, necessarily and undoubtedly retained courts' common-law inherent power to authorize release of grand-jury materials, even in the absence of an express exception to Rule 6(e).[1] As proof of this fact, I explain how the viability of a 2018

---

[1] Judge Wilson and some of our sister Circuits have reached this same ultimate conclusion that Rule 6(e) preserves courts' common-law inherent power to authorize release of grand-jury

law depends on this construction of Rule 6(e).  Section II.B shows that, in contrast to the Majority Opinion's unsupported view to the contrary, Supreme Court precedent forcefully validates the conclusion that where, as here, the efficacy of a later Congress's legislative enactment necessarily depends on that later Congress's plausible construction of an earlier law, it is entitled to deference.  Finally, Section III establishes that Congress's reading of its own enactment is consistent with Supreme Court precedent.

## I.

Judge Wilson's dissent ably reviews courts' traditional supervisory power over grand juries, so I do not cover that again here, *see* Wilson Dissent at 59–63 & n.5, except to emphasize that before Rule 6(e)'s enactment, courts had the power to disclose grand-jury materials when appropriate.  The Majority Opinion does not dispute this fact.

That common-law historical background, *see Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979), is crucial to our interpretation of Rule 6(e) because "Congress is understood to legislate against a background of common-law principles." *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991))

---

materials outside the specified exceptions to Rule 6(e).  *See Carlson v. United States*, 837 F.3d 753, 766–67 (7th Cir. 2016); *In re Petition of Craig*, 131 F.3d 99, 102–03 (2d Cir. 1997).

(quotation marks and ellipses omitted).   And when a statute "covers an issue previously governed by the common law, we interpret the statute with the presumption that Congress intended to retain the substance of the common law."  *Id.* (citing *Isbrandtsen Co., Inc. v. Johnson*, 343 U.S. 779, 783 (1952)).

As Judge Wilson explains, under the common law, courts always had the inherent authority to permit the breach of grand-jury secrecy when circumstances so required.  And since Rule 6(e) was intended to "codif[y] the traditional rule of grand jury secrecy," *see United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983), we cannot lightly conclude that Rule 6(e) jettisoned that common-law inherent authority.  *See United States v. Socony-Vacuum Oil Co., Inc.*, 310 U.S. 150, 233–34 (1940).  To the contrary, we must keep this historical background in mind when we consider the meaning of Rule 6(e).

## II.

### A.

That brings me to a review of Congress's understanding of Rule 6(e).  Despite the attraction of Rule 6's most natural reading, that construction does not control our decision here, where "a clearly expressed legislative intention to the contrary" exists. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). We do not have to wonder whether Congress intended Rule 6(e) to preserve courts' common-law-based inherent authority to permit the disclosure of grand-jury records;

we know that Congress understands Rule 6(e) to do just that. That's because less than two years ago, it enacted the Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, 132 Stat. 5489 (2019) (codified at 44 U.S.C. § 2107) (the "Cold Case Act"). And as the Majority Opinion does not deny, *see* Maj. Op. at 30 n.14, a significant chunk of that Act can function only if Rule 6(e) preserves courts' inherent authority to allow the release of grand-jury materials.

The Cold Case Act is a vital tool in trying to bring at least some form of closure to a deplorable chapter in our history—that of violence against racial minorities. Broadly described, the law requires the Archivist of the United States to establish and disclose to the public a collection of records relating to unsolved civil-rights cases that arose from January 1, 1940, through December 31, 1979. *See* Pub. L. No. 115-426 at §§ 2(1)–(3), 3(a)–(b). The Senate committee that recommended passage of the law noted that the records are "valuable for researchers, journalists, historians, and those interested in solving these unsolved crimes," and that "public disclosure of information may actually increase the likelihood of enforcement by crowdsourcing the materials." *Civil Rights Cold Case Records Collection Act of 2018: Report of the Committee on Homeland Security and Governmental Affairs*, S. Rep. No. 115-424, 115th Cong., 2d Sess. 2 (2018) ("Senate Rpt.").

To allow for a deeper understanding of the covered civil-rights cases, the Cold Case Act creates a multi-step mechanism for the United States Attorney General to

79

seek court-authorized release of grand-jury materials to the public. As relevant here, under that process, the Attorney General can petition the relevant court for the disclosure of the grand-jury records. *See* Pub. L. No. 115-426 at § 8(a). Then, the court determines whether the requested materials should be released.

But here's the part that's important for our analysis of Rule 6(e): significantly, the Cold Case Act is not a freestanding grant of authority—separate and apart from Rule 6(e)—to the courts to authorize the release of grand-jury materials. Rather, the Act expressly anticipates that a court will be able to authorize the disclosure of any covered grand-jury records through only the Rule 6 mechanism.

In this respect, the statute specifies that "[a] request for disclosure of civil rights cold case records under this Act shall be deemed to constitute a showing of particularized need *under rule 6 of the Federal Rules of Criminal Procedure.*" *Id.* at § 8(a)(2)(B) (emphasis added). Not only does the statute expressly invoke only Rule 6 as the mechanism under which the Attorney General can seek to obtain disclosure of grand-jury materials, but the reference to "particularized need" is also significant. That is the standard the Supreme Court has articulated for determining when a court may authorize release of grand-jury materials under Rule 6(e).[2]

---

[2] The Majority Opinion correctly notes that disclosures made under Rule 6(e)(3)(A)–(D) may occur without court approval. Maj. Op. at 14–15. But for two reasons, these exceptions clearly do not authorize disclosure of the grand-jury records sought under the Cold Case Act. First, the Cold Case Act requires the Attorney General to petition a court in the United States for the release of grand-jury materials. *See* Pub. L. No. 115-426 at § 8(a)(2)(A). So it cannot be the case

Rule 6(e)(3)(E) sets forth Rule 6(e)'s articulated exceptions under which a court may authorize release of grand-jury materials. Yet it is not enough for a party seeking disclosure to point to an exception under Rule 6(e)(3)(E); rather, movants must also "show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222; *see Sells Eng'g*, 463 U.S. at 443 ("We have consistently construed the Rule, however, to require a strong showing of *particularized need* for grand jury materials before any disclosure will be permitted.") (emphasis added) (citations omitted).

We must presume that Congress deliberately used the term "particularized need." As the Supreme Court has explained, "if a word is obviously transplanted from another legal source . . . it brings the old soil with it." *Evans v. United States*, 504 U.S. 255, 260 n.3 (1992)) (quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)). Indeed, "[a]ny word or phrase that comes before a court for interpretation is . . . . part of an entire *corpus juris*. So, if possible, it should no more be interpreted to clash with the rest of that corpus than it

---

that any of these self-executing exceptions in Rule 6(e)(3)(A)–(D) authorize disclosure under the Act. And second, even the most cursory review of these exceptions—which permit disclosure for law-enforcement purposes to other government attorneys or personnel assisting government attorneys (Rule 6(e)(3)(A)(i)–(iii)), to a separate grand jury (Rule 6(e)(3)(C)), or in limited circumstances to foreign intelligence officials (Rule 6(e)(3)(D))—reveals that, by their terms, they do not authorize disclosure of grand-jury materials to the general public.

should be interpreted to clash with other provisions of the same law." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 39, at 252 (2012); *cf. Holloway v. United States*, 526 U.S. 1, 9 (1999) (recognizing that "it is reasonable to presume that Congress was familiar with the cases and the scholarly writing" concerning its laws) (citing *Cannon v. University of Chicago*, 441 U.S. 677, 696–68 (1979)). So rather than creating a new exception, the plain language of Section 8(a)(2)(B) of the Cold Case Act requires courts considering Cold Case Act requests from the Attorney General to act under only Rule 6(e).

But significantly, when we look at the specific exceptions Rule 6(e) authorizes for a court to allow disclosure, we readily find that not a single one permits a court to authorize the Attorney General's disclosure of grand-jury materials to the public. To show why that is so, I review the articulated exceptions.

Rule 6(e)(3)(E)(i) permits the disclosure of materials "preliminarily to or in connection with a judicial proceeding." As the Supreme Court has explained, under this exception to Rule 6(e), "it is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge." *United States v. Baggot*, 463 U.S. 476, 480 (1983). Rather, "[t]he focus is on the *actual use* to be made of the material. If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under [this exception] is not permitted." *Id.*

82

In contrast, the primary purpose of the Cold Case Act is to provide public access to the records of the covered cold cases, for educational, historical, and scholarly uses. Perhaps in a rare case, the public's research into the released materials may yield enough evidence to allow a governmental agency to reopen a cold case if it desires to do so and not all suspects are dead. But even accounting for that exceptional circumstance, the primary purpose of the Cold Case Act is, most certainly, not to assist in preparation or conduct of a judicial proceeding. Indeed, a covered civil-rights case from the 1940-1979 period is subject to the Act for the very reason that the Attorney General has no promising leads that would suffice to identify and indict a living potential defendant. So this exception has no bearing here.

Next, Rule 6(e)(3)(E)(ii) allows for breach of grand-jury secrecy that comes "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Under the Cold Case Act, though, the Attorney General—not an indicted defendant—is the one authorized to request disclosure of the grand-jury materials. Besides, a defendant obtains the grand-jury materials under this exception for the purpose of seeking to dismiss his indictment, not to release them to the public. So this exception has no bearing here.

83

Rule 6(e)(3)(E)(iii) authorizes disclosure of grand-jury records "at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation." But while the materials the Attorney General asks for under the Cold Case Act are at the request of the government, she does not seek them for Rule 6(e)(3)(iii)'s required purpose—that is, because they are "sought by a foreign court or prosecutor for use in an official criminal investigation." *Cf. Baggot*, 463 U.S. at 480. This exception also does not authorize release to the Attorney General for disclosure to the general public. So this exception has no bearing here.

Like Rule 6(e)(3)(E)(iii), Rule 6(e)(3)(E)(iv) permits disclosure at the government's request, but this time, only if the government "shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law." Again, though, the exception does not authorize disclosure by the government to the general public, as the Cold Case Act requires. And on top of that, release of records under the Cold Case Act is not "for the purpose of enforcing [state, Indian tribal, or foreign criminal law]." *Cf. Baggot*, 463 U.S. at 480. So this exception has no bearing here.

Finally, Rule 6(e)(3)(E)(v) allows for disclosure "at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an

84

appropriate military official for the purpose of enforcing that law." Once again, the exception does not authorize disclosure by the government to the general public, as the Cold Case Act requires. Nor is release of records under the Cold Case Act "for the purpose of enforcing [military criminal law under the Uniform Code of Military Justice]." *Cf. Baggot*, 463 U.S. at 480. So this exception has no bearing here.

That's it. We're fresh out of Rule 6(e)(3)(E) specified exceptions. And just to avoid any doubt, I note that Rule 6(e) also does not authorize disclosure merely upon a showing of "particularized need."

So how under Rule 6(e) did Congress expect a court to authorize the Attorney General's disclosure of cold-case-civil-rights grand-jury materials? Obviously, it construed Rule 6(e) to somehow endow courts with that authority. Otherwise, we would have to assume that Congress enacted the grand-jury-records-release mechanism of the Cold Case Act knowing that it would be an exercise in futility. That can't be right. Indeed, "one of the most basic interpretive canons" requires us to construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation and quotation marks omitted).

Then why did Congress view Rule 6(e) to permit courts to authorize the Attorney General's release of cold-case-civil-rights grand-jury materials to the public? There's only one possible answer: Congress construed Rule 6(e) to

85

maintain from the common-law tradition the inherent authority of courts to release grand-jury materials upon an appropriate showing—that of "particularized need."

## B.

As I have noted, the Majority Opinion does not deny this. Rather, it fudges a bit, acknowledging only that under the Majority Opinion's construction of Rule 6(e), "Rule 6(e) does not clearly permit the release of civil rights cold case [grand-jury] records." Maj. Op. at 30 n.14.

That is quite an understatement of the problem with the Majority Opinion's interpretation of Rule 6(e): Rule 6(e)'s express exceptions neither clearly nor unclearly permit the release of Cold Case Act grand-jury materials. They simply don't allow the disclosure of Cold Case grand-jury materials at all. Even the Majority Opinion does not try to explain how, under its view of Rule 6(e), the grand-jury-release provisions of the Cold Case Act can be operable—even in an unclear way. And no wonder—there is no way.

Because the Majority Opinion cannot deny that the Cold Case Act proves that Congress construes Rule 6(e) to retain courts' common-law inherent power to authorize disclosure of grand-jury materials outside of rule 6(e)'s enumerated exceptions, it is reduced to arguing that we should simply ignore Congress's interpretation of Rule 6(e) because Congress revealed it in the Cold Case Act. Not

86

only does this interpretation contradict Supreme Court precedent, but it also defies logic.

The Supreme Court has long held that "subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Loving v. United States*, 517 U.S. 748, 770 (1996) (cleaned up and citations omitted); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381 n.8 (1969) (describing this proposition as a "venerable" principle and citing in support *Alexander v. Mayor & Commonalty of Alexandria*, 9 U.S. 1 (1809); *United States v. Freeman*, 44 U.S. 556 (1845); *Stockdale v. Ins. Cos.*, 87 U.S. 323 (1874)). The Majority Opinion tries to escape this "venerable" principle by contending that "the Cold Case Act does not declare anything about the meaning of Rule 6(e)," since it does not expressly mention Rule 6(e) in its text (other than to require the Attorney General to obtain grand-jury materials from the courts through the Rule 6(e) process). Maj. Op. at 30 n.14.

But Supreme Court precedent shows that Congress can declare its intent expressly or implicitly. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998). As the Majority Opinion correctly observes, Congress can, for example, state in later legislation what the earlier law "mean[s]," *id.* (citing *Fed. Hous. Admin. v. Darlington, Inc.*, 358 U.S. 84, 90 (1958)), or it may "seek to clarify an earlier enacted general term." *Id.* (citing *Red Lion*, 395 U.S. at 380–81).

87

But just as effectively, Congress can express its intent through implicit means, such as by enacting a law that "depend[s] for [its] effectiveness upon clarification … of an earlier statute." *Id.* (citing *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 595–96 (1980)); *see also Loving*, 517 U.S. at 770.  This is so because a later statute that relies for operability on a particular construction of an earlier law "is either a legislative exposition of a power formerly granted, or the grant of a new power." *Alexander*, 9 U.S. at 8; *see also Freeman*, 44 U.S. at 564– 65 ("[I]f it can be gathered from a subsequent statute *in pari materia*, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."); *see also* Scalia & Garner, *Reading Law* § 39, at 252 ("Several acts *in pari materia*, and relating to the same subject, are to be taken together, and compared in the construction of them, because they are considered as having one object in view, and as acting upon one system.") (citation and quotation marks omitted).

This makes perfect sense.  "With respect to subsequent legislation[,] . . . Congress has proceeded formally through the legislative process." *South Carolina v. Regan*, 465 U.S. 367, 378 n.17 (1984) (cleaned up and citations omitted).  And if Congress had enough votes to pass legislation that depends for its efficacy on a particular plausible interpretation of an earlier law, it by definition had enough votes to enact legislation that expressly adopts the necessary construction of the earlier

88

law.[3]  That it did not do so proves only that it had no reason to believe that, in the future (and in violation of separation-of-powers principles), we would insist on imposing our own opposing construction of the earlier law, even though that interpretation would render Congress's most recent enactment nonfunctional. Otherwise, we would have to believe that Congress went to the trouble of enacting the grand-jury provisions of the Cold Case Act knowing full well that they could never function.  That would make about as much sense as concrete life preservers.

Yet the Majority Opinion simply dismisses the fact that the Cold Case Act's grand-jury-records-release provisions are inoperable under its interpretation of Rule 6(e), arguing that "the Cold Case Act *on its face* says nothing about the meaning of Rule 6(e)."  Maj. Op. at 31 n.14 (emphasis added).  This argument completely

---

[3] So if Congress did believe that Rule 6 stripped courts of inherent authority to authorize the release of grand-jury materials, it could have changed the rule to accommodate the Cold Case Act.  Indeed, Congress substantively amended Rule 6 as recently as 2011 to "allow[] a judge to take a grand jury return by video teleconference."  Fed. R. Crim. P. 6 advisory committee's note to 2011 amendments.  Nothing prevented it from again amending it in 2018, to enable the operability of the Cold Case Act, if it had construed Rule 6(e) not to have preserved courts' inherent authority.  After all, it made changes to several other Federal Rules of Criminal Procedure that year.  For example, Rule 12.4 ("Disclosure Statement") was amended in 2018 to specify the deadline for filing a Rule 12.4(a) statement and to allow the government to "show[] good cause" for why it need not file a statement identifying any organization victim of an alleged criminal activity.  *See* Fed. R. Crim. P. 12.4 advisory committee's note to 2018 amendments.  Likewise, Congress made multiple changes to Rule 49 ("Serving and Filing Papers"), including introducing subsections (a)(3) and (a)(4) that list the permissible means of service.  *See* Fed. R. Crim. P. 49 advisory committee's note to 2018 amendments.  And Rule 45 ("Computing and Extending Time") was amended to reflect the revisions to Rule 49.  *See* Fed. R. Crim. P. 45 advisory committee's note to 2018 amendments.  That Congress did not amend Rule 6(e) when it enacted the Cold Case Act, which depends for functionality on the construction of Rule 6(e) that recognizes courts' continuing inherent power to order release of grand-jury records outside an articulated exception, therefore demonstrates that Congress did not need to do so, since Rule 6(e) already included courts' inherent authority to release grand-jury materials.

89

ignores the Supreme Court precedent I have reviewed above, which holds that a later Congress's legislation that relies for its efficacy on a particular plausible interpretation of an earlier Congress's law necessarily declares the meaning of the earlier law—even if it does not do so explicitly.  And the Majority Opinion brushes aside this principle that the Supreme Court has relied on without exception for more than two-hundred years, without so much as citing a single authority supporting its position.  *See* Maj. Op. at 30–31 n.14.  This sinks the Majority Opinion faster than the concrete life preserver its analysis would saddle onto the Cold Case Act.

We must always keep in mind that construing a statute or rule is not an academic exercise; our aim is to read it as Congress intended.  After all, Congress, not the Judiciary, holds the legislative power.  Often, it is hard to know precisely what congressional intent was, so we rely on the most natural interpretation of the text.  That rule generally makes sense.  But where, as here, congressional construction of the rule we are interpreting is objectively and undeniably determinable from another legislative enactment and is consistent with the common-law background against which the rule was adopted, we have no business imposing our own conflicting interpretation of the rule—especially when doing so invalidates portions of another law and violates more than two-hundred years of Supreme Court precedent.

### III.

90

This conclusion is, of course, at odds with the Majority Opinion's assertion that the Supreme Court "has on several occasions suggested that Rule 6(e) is exclusive." Maj. Op. at 17. Respectfully, I believe the Majority Opinion has it wrong.

Consider *Sells Engineering*, which the Majority Opinion cites. The Supreme Court's language in that case suggests the Court reached the same conclusion that I have, which is that Rule 6(e) imports the common-law tradition of courts' inherent power to authorize disclosure. There, after reiterating the critical importance of grand-jury secrecy, the Court explained that "[i]n the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized." *Sells Eng'g*, 463 U.S. at 425 (citation omitted).

Significantly, the Court used the term "reluctant" to describe the approach a court should take in evaluating whether to authorize a breach of grand-jury secrecy not "clear[ly] indicat[ed] in a statute or Rule." In other words, while the general rule requires that a court permit only expressly authorized disclosures, rare exceptions are sometimes appropriate. If that were not the case, the Supreme Court would have simply said that "in the absence of a clear indication in a statute or Rule, we must conclude that a breach of this secrecy has not been authorized." That it instead only cautioned "reluctan[ce]" in finding authorization to release grand-jury materials in the absence of an express exception implicitly acknowledges the continuing

91

authority of courts to go beyond the enumerated exceptions in Rule 6(e)(3) in at least some—albeit quite rare—circumstances.

The other cases that the Majority Opinion relies on fare no better. The Majority Opinion invokes *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398 (1959), for the proposition that "any disclosure of grand jury minutes is covered by [Rule] 6(e)." Maj. Op. at 17. But significantly, the Supreme Court made this statement in the context of determining that release of grand-jury testimony of a trial witness was governed ultimately by Rule 6(e), not by *Jencks v. United States*, 353 U.S. 657 (1957). It neither had reason to opine nor did it opine on whether Rule 6(e)'s listed exceptions are exclusive when Rule 6 controls a potential disclosure.

The Majority Opinion's reliance on the Supreme Court's statement in *Baggot*, 463 U.S. at 479, that Rule 6(e)'s exception for release of grand-jury materials "preliminarily to or in connection with a judicial proceeding" "is, on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials," is similarly misplaced. Maj. Op. at 17–18. In *Baggot*, the Supreme Court was interpreting the "preliminarily to or in connection with a judicial proceeding" exception to Rule 6(e). At the outset of its analysis, the Court made the statement the Majority Opinion invokes. In context, it is clear that the Court was simply identifying the provision it was analyzing—a provision that each party agreed was the relevant one and argued the terms of which supported its position. So as in

92

*Pittsburgh Plate Glass*, the Court had no reason to consider—and did not in fact consider—whether Rule 6(e)'s listed exceptions are exclusive when Rule 6 controls a potential disclosure.

Finally, the Majority Opinion points to *United States v. Williams*, 504 U.S. 36 (1992), for the proposition that Rule 6(e) "plac[es] strict controls on disclosure of matters occurring before the grand jury." Maj. Op. at 18 (citing *id.* at 46 n.6) (cleaned up). *Williams* wasn't even about disclosure of grand-jury information at all. Rather, the question there concerned whether a district court had the power to dismiss an otherwise-valid indictment because the government did not disclose to the grand jury "substantial exculpatory evidence" in its possession. *Williams*, 504 U.S. at 37–38.

In concluding courts do not enjoy that authority, the Court gave examples of the circumstances under which a court may rely on its supervisory power to dismiss an indictment, specifically referring to situations where the *government* has violated certain rules created "to ensure the integrity of the grand jury's functions." *Id.* at 46. In a footnote, it listed several such rules. One of those listed was Rule 6(e), described in passing in the terms the Majority Opinion quotes. *Id.* at 46 n.6. In context, it is clear that the Court was not referring to aspects of Rule 6(e) that address the *courts'* authority to permit release of grand-jury materials but rather to the parts of Rule 6(e) that allow release of grand-jury materials without the courts' authorization. And in

93

any case, at no time in *Williams* did the court evaluate—or have any reason to evaluate—whether Rule 6(e)'s listed exceptions are exclusive.

Thus, Supreme Court precedent does not "suggest[] that Rule 6(e) is exclusive." Maj. Op. at 17. If anything, it supports the opposite conclusion.

## IV.

In short, we don't have to guess whether Congress intended to maintain courts' common-law inherent power to authorize release of grand-jury materials in appropriate circumstances. We know indisputably that it did. Otherwise, we must accept that Congress created the grand-jury-records-release mechanism of the Cold Case Act knowing that no way to utilize that provision exists. That would be nonsensical. When, as here, a later Congress's statutory enactment depends for its efficacy on a particular plausible interpretation of an earlier law, that later Congress's interpretation is entitled, under longstanding Supreme Court precedent, to "great weight." *Loving*, 517 U.S. at 770 (cleaned up and citations omitted). And well it should be, in line with the proper roles of the Legislative and Judicial branches. The Majority Opinion offers no answer to this sturdy principle. Because the Majority Opinion does not defer to Congress's plausible legislative interpretation of Rule 6(e), I respectfully dissent.

94



**Office of the Attorney General**

**Washington, D. C. 20530**

October 18, 2011

The Honorable Reena Raggi, Chair
Advisory Committee on the Criminal Rules
704S United States Courthouse
225 Cadman Plaza East
Brooklyn, New York  11201-1818

Dear Judge Raggi:

The Department of Justice recommends an amendment to Rule 6(e) of the Federal Rules of Criminal Procedure to allow district courts to permit the disclosure, in appropriate circumstances, of archival grand-jury materials of great historical significance and to provide a temporal end point for grand-jury secrecy with respect to materials that become part of the permanent records of the National Archives.

Although most other categories of historically significant federal records, including classified records, eventually become part of the public historical record of our Nation, Rule 6(e) recognizes no point at which the blanket of grand-jury secrecy is lifted. The public policies that justify grand-jury secrecy are, of course, "manifold" and "compelling." *Pittsburgh Plate Glass Co.* v. *United States*, 360 U.S. 395, 399 (1959). But they do not forever trump all competing considerations. After a suitably long period, in cases of enduring historical importance, the need for continued secrecy is eventually outweighed by the public's legitimate interest in preserving and accessing the documentary legacy of our government. For this reason, a number of federal courts have granted third-party petitions to disclose historically significant grand-jury materials—most recently, for example, the transcript of President Nixon's 1975 testimony to the Watergate grand jury—by invoking the inherent authority of federal courts as a justification for deviating from the requirements of Rule 6(e).

The difficulty is that, as the Supreme Court has made clear, federal courts have no inherent authority to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure. See, *e.g.*, *Carlisle* v. *United States*, 517 U.S. 416, 426 (1996). In our view, the growing acceptance among federal courts of a "historical significance" exception to Rule 6(e) threatens to undermine the essential principle that Rule 6(e) encompasses, within its four corners, the rule of grand-jury secrecy and all of its exceptions and limitations. We therefore propose an amendment to Rule 6(e) that would accommodate society's legitimate interest in securing eventual public access to grand-jury materials of significant historical importance, while at the same time defining the contours of that access within the text of Rule 6(e).

95

The Honorable Reena Raggi
Page 2

### A. Background

Rule 6(e) "codifies the traditional rule of grand jury secrecy," *United States* v. *Sells Engineering, Inc.*, 463 U.S. 418, 425 (1983), which is "older than our Nation itself," *Pittsburgh Plate Glass*, 360 U.S. at 399. Rule 6(e) imposes a flat prohibition on disclosures by non-witness participants in grand-jury proceedings "[u]nless these rules provide otherwise." Fed. R. Crim. P. 6(e)(2)(B). Most of the exceptions, which are enumerated in Rule 6(e)(3), concern disclosures to other government officials or related persons in the course of government business. See Rule 6(e)(3)(A)-(D).

Rule 6(e)(3)(E), in turn, identifies five circumstances in which a district court may order the disclosure of grand-jury materials in its own discretion. It is not an open-ended list: by its plain terms, the rule defines the universe of circumstances in which a district court "may authorize disclosure . . . of a grand-jury matter." Of the five circumstances listed, only two permit disclosures to non-government officials:

> (E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
>
>> (I) preliminarily to or in connection with a judicial proceeding;
>>
>> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury; . . .

Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).

Neither of these provisions—nor any other provision of law—authorizes a third party to obtain access to grand-jury material merely because it is historically significant. The first exception ("preliminarily to or in connection with a judicial proceeding") cannot support a free-standing petition to release historical grand-jury records. "[O]bviously the permission to disclose for use in connection with 'a judicial proceeding' does not encompass a proceeding instituted solely for the purpose of accomplishing disclosure." *In re Biaggi*, 478 F.2d 489, 492 (2d Cir. 1973) (Friendly, J.). Rather, disclosure under Rule 6(e)(3)(E)(I) is permitted only if "the primary purpose" is "to assist in preparation or conduct of a judicial proceeding," *United States* v. *Baggot*, 463 U.S. 476, 480 (1983), and only where the materials are "needed to avoid a possible injustice" and the disclosure is tailored "to cover only material so needed," *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U.S. 211, 222 (1979). And all of the other exceptions address specific circumstances in which the need for the materials and identity of the recipient is carefully delineated. In this sense, Rule 6(e) "is, on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials." *Baggot*, 463 U.S. at 479. The court-ordered disclosure to third-party requesters of grand-jury records in their entirety,

96

The Honorable Reena Raggi
Page 3

unconnected to any otherwise pending judicial proceeding, without a particularized showing of need, and based solely on the records' historical significance, is outside the contemplation of Rule 6(e).

Nonetheless, some courts have exercised what they have described as their inherent authority to release historically significant grand-jury material. These courts have held that "special circumstances" may justify disclosure of grand-jury materials even when none of Rule 6(e)'s specific exceptions applies. The leading decision is *In re Craig*, 131 F.3d 99 (2d Cir. 1997), in which the Second Circuit stated that "there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of the rule." *Id.* at 102 (quoting *In re Biaggi*, 478 F.2d at 494 (supplemental opinion)). Under that doctrine, the court reasoned, "historical interest, on its own," may "justify[] release of grand jury material in an appropriate case." *Id.* at 105. "To the extent that the John Wilkes Booth or Aaron Burr conspiracies, for example, led to grand jury investigations, historical interest might by now overwhelm any continued need for secrecy." *Ibid.* To the government's argument that Rule 6(e) controls the disclosure of grand-jury material, the court responded that the rule "reflects rather than creates the relationship between federal courts and grand juries," *id.* at 102 (citing *Pittsburgh Plate Glass*, 360 U.S. at 399), and that "permitting departures from Rule 6(e)" is therefore "fully consonant with the role of the supervising court," *id.* at 103.[1]

Embracing this approach, district courts in several circuits have granted petitions for access to grand-jury materials of historical importance. See, *e.g.*, *In re Petition of Kutler*, No. 10-547, 2011 WL 3211516 (D.D.C. July 29, 2011) (granting petition for access to grand-jury testimony by President Nixon); *In re Tabac*, No. 3:08-mc-0243, 2009 WL 5213717 (M.D. Tenn. Apr. 14, 2009) (same, grand-jury records concerning the jury-tampering indictment of Jimmy Hoffa); *In re Petition of National Security Archive*, No. 1:08-cv-6599, Docket entry No. 3 (S.D.N.Y. Aug. 26, 2008) (same, espionage indictment of Julius and Ethel Rosenberg); *In re American Historical Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999) (same, espionage investigation of Alger Hiss). Following the Second Circuit's reasoning in *In re Craig*, these decisions have all relied on a notion of inherent authority to approve the release of grand-jury records that Rule 6(e) would otherwise require to remain secret. In the *Kutler* case, for example, the district court

---

[1] The Eleventh Circuit reached a similar conclusion about the scope of a district court's inherent authority in *In re Petition to Inspect and Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir.), cert. denied, 469 U.S. 884 (1984), which concerned a petition filed on behalf of a special committee of the court of appeals that was investigating misconduct by a district judge. The Eleventh Circuit rejected the contention that Rule 6(e) spells out the exclusive basis on which a court may order the disclosure of grand-jury records and held that the district court had properly exercised its "inherent power" to grant the special committee's request. *Id.* at 1268; see also *Haldeman* v. *Sirica*, 501 F.2d 714 (D.C. Cir. 1974) (en banc). Although *Hastings* relied on inherent authority, the disclosure might alternatively be understood as being "in connection with a judicial proceeding." The court viewed the disclosure to the special committee as "at least closely analogous to the situation for which the explicit Rule 6(e)(3)(C)(I) exception was created." 735 F.2d at 1268.

The Honorable Reena Raggi
Page 4

granted a petition filed by historian Stanley Kutler and various historical organizations for access to the transcript of President Nixon's 1975 testimony before the Watergate special grand jury and certain related files of the Watergate Special Prosecution Force. The petitioners conceded that no provision of Rule 6(e) would permit the court to approve their request. The court nevertheless approved it, holding that the power to release historically significant grand-jury records is "well grounded in courts' inherent supervisory authority to order the release of grand jury materials." 2011 WL 3211516, at *5; see also *id.* at *3 ("[C]ourts' ability to order the disclosure of grand jury records has never been confined by Rule 6(e)'s enumerated exceptions.").

Although historians have an understandable desire for access, many decades after the investigations have closed, to grand-jury records concerning the Watergate investigation, the espionage trial of the Rosenbergs, and similar matters of enduring historical resonance—provided that interests in personal privacy and governmental functions are taken into account and appropriately weighed—the Supreme Court has specifically rejected the proposition that a district court has inherent authority to create exceptions to the rules of criminal procedure adopted by the Court in its rulemaking capacity. "Whatever the scope of [a court's] 'inherent power,' * * * it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle* v. *United States*, 517 U.S. 416, 426 (1996); see also *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 254-255 (1988); *Johnson* v. *United States*, 520 U.S. 461, 466 (1997) (refusing to "creat[e] out of whole cloth * * * an exception to" Rule 52(b), "an exception which we have no authority to make" (citing *Carlisle*, 517 U.S. at 425-426)). As the Supreme Court explained in *Bank of Nova Scotia*, the Rules Enabling Act provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. 2072(b); see 487 U.S. at 255. That principle applies *a fortiorari* under Rule 6(e), which in relevant part was enacted directly by Congress. Pub. L. No. 95-78, § 2(a), 91 Stat. 319 (1977); see *Thomas* v. *Arn*, 474 U.S. 140, 148 (1985) (even a "sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions"). Because Rule 6(e) is, "on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials," *Baggot*, 463 U.S. at 479, a judicially created doctrine of public access to historically significant grand-jury material exceeds the bounds of courts' inherent authority.

Indeed, federal courts do not typically regulate the conduct of a grand jury, which is "an institution separate from the courts, over whose functioning the courts do not preside." *United States* v. *Williams*, 504 U.S. 36, 47 (1992). "Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office." *Ibid.* Consequently, "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own

The Honorable Reena Raggi
Page 5

proceedings." *Id.* at 50. The notion that a court possesses "inherent supervisory authority to order the release of grand jury materials," *Kutler*, 2011 WL 3211516, at *5, is therefore not only inconsistent with the prescriptive force of Rule 6(e), but also in tension with the institutional relationship between courts and grand juries.

Notably, Judge Friendly's 1973 decision in *In re Biaggi*, the wellspring of the "special circumstances" doctrine, predates the Supreme Court's decisions in *Carlisle*, *Bank of Nova Scotia*, and *Williams*. So, too, does the Eleventh Circuit's decision in *Hastings*. See note 1, *supra*. Indeed, *In re Biaggi* also predates Congress's direct enactment of Rule 6(e) in 1977, which undermines any claim that the rule is open to circumvention through a court's inherent authority. And although the Second Circuit decided *In re Craig* in 1997, the court "reaffirm[ed] the continued vitality of our 'special circumstances' test of *Biaggi*," 131 F.3d at 103, without citing or discussing *Carlisle*, *Bank of Nova Scotia*, or *Williams*.[2]

In sum, the Second Circuit's basic insight in *In re Craig*—that in long-closed cases of enduring historical significance, the public's interest in access to the primary-source records of our national history may on occasion "overwhelm any continued need for secrecy," 131 F.3d at 105—seems fundamentally correct. Although the justifications for grand-jury secrecy "are not eliminated merely because the grand jury has ended its activities," *Douglas Oil*, 441 U.S. at 222, neither do those interests remain paramount for all time. But the present state of the doctrine, in which individual district courts entertain motions for disclosure under their inherent authority and subject to their unbounded discretion, is untenable under governing Supreme Court precedent. It is also harmful to the fundamental principle that Rule 6(e) controls the secrecy of grand-jury materials within its four corners.

## B. Description of Proposed Amendment

The Department of Justice therefore proposes amending Rule 6(e) to authorize the disclosure of historically significant grand-jury materials after a suitable period of years, subject to appropriate limitations and procedural protections. By expressly permitting district courts to act on requests for such records, yet at the same time cabining their discretion through a formal exception to Rule 6(e), the Committee can maintain the primacy of the Criminal Rules and the exclusivity of the framework created by Rule 6(e). Such an amendment would recognize the public's legitimate interest in gaining access to records that may cast new light on important people and events in American history, while at the same time protect the important goals served by the rule of grand-jury secrecy.

---

[2] The Second Circuit in *In re Craig* also relied on *Pittsburgh Plate Glass* for the proposition that Rule 6(e) commits disclosure to the discretion of the trial judge. 131 F.3d at 102. But the Supreme Court in that case emphasized that "any disclosure of grand jury minutes is covered by Fed. Rules Crim. Proc. 6(e) promulgated by this Court in 1946 after the approval of Congress." 360 U.S. at 398-399.

The Honorable Reena Raggi
Page 6

Our proposal limits the release of grand-jury records to those determined to have permanent historical value under Title 44, United States Code.[3]  Such records are transferred to the National Archives and Records Administration (NARA) as part of Department of Justice case files and form part of its permanent collection.  This threshold screening requirement ensures that grand-jury secrecy is not abrogated in routine cases that do not, in themselves, have any recognized historical value.  Within the universe of those documents transferred to NARA, the proposal embodies a two-tier approach.  First, as to cases at least 30 years old, the rule would authorize district courts, on a case-by-case basis, to determine that the requirements of grand-jury secrecy are outweighed by the records' historical significance.  Second, as to cases that are 75 years old or older, grand-jury secrecy interests would cease to be applicable and the records would become available to the public under the same standards applicable to other public records held by NARA.

The current treatment of grand-jury records helps illuminate this proposal.  Much grand-jury material is deemed to be of no particular historical value.  After the relevant cases are closed and a suitable period has passed, these materials are destroyed pursuant to record schedules approved by NARA.  Grand-jury materials of continuing interest or value to the Department of Justice are stored for a period of time.  Of these materials, some are ultimately transferred to the Archives' custody on the basis that they have been "determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government."  44 U.S.C. 2107(1).  The standards and timetables governing that determination for case files that contain grand-jury information are set forth in records schedules already in place for the Department of Justice and approved by NARA.  Under present law, a Freedom of Information Act (FOIA) request filed with NARA for grand-jury records in NARA's custody will be denied under FOIA Exemption 3, 5 U.S.C. 552(b)(3), on the ground that disclosure is barred under Rule 6(e).  See, *e.g.*, *Fund for Constitutional Government* v. *National*

---

[3] In relevant part, 44 U.S.C. 2107 provides:

> When it appears to the Archivist to be in the public interest, he may—
>
> > (1) accept for deposit with the National Archives of the United States the records of a Federal agency, the Congress, the Architect of the Capitol, or the Supreme Court determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government; [and]
> >
> > (2) direct and effect the transfer to the National Archives of the United States of records of a Federal agency that have been in existence for more than thirty years and determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government, unless the head of the agency which has custody of them certifies in writing to the Archivist that they must be retained in his custody for use in the conduct of the regular current business of the agency[.]

44 U.S.C. 2107(1)-(2).

The Honorable Reena Raggi
Page 7

*Archives and Records Service*, 656 F.2d 856, 866-870 (D.C. Cir. 1981).

Under the proposed rule, courts would have authority to consider requests for the disclosure of grand-jury records of great historical significance after they have been transferred to the permanent custody of the Archives. No request could be entertained until the records have been in existence for 30 years. The 30-year benchmark corresponds to the statutory time after which the Archivist may direct that agencies transfer historically significant records to his custody. See note 3, *supra*. Those two limitations ensure that (1) the grand-jury records might have some value to historians and (2) sufficient time has passed both to gauge their historical significance and to create a reasonable possibility that privacy interests have faded to a degree that disclosure might be warranted, with or without redactions.

But even within that universe of records, grand-jury secrecy interests still have presumptive force, and the grant of a disclosure order under Rule 6(e) should not be routine. Rather, it should be relatively rare—as it has been to date. Courts should evaluate each request on a case-by-case basis to assess whether the records have true value to historians and the public and whether that value outweighs the secrecy interests of living persons. While such an evaluation will inevitably involve a measure of judgment and discretion in light of the specific facts and context, courts will be guided by the paradigm examples of disclosure to date—*e.g.*, the Nixon, Rosenberg, and Hiss grand-jury testimony—and by the factors considered by the courts that ordered disclosure in those cases. Those factors include:

> (I) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*In re Craig*, 131 F.3d at 106. The proposed rule authorizing disclosure of grand-jury material does not spell out these factors, which are better left to elaboration in the Advisory Committee Notes and then to development in the case law. But it does require the district court to make appropriate findings, before authorizing disclosure, to determine that the records have "exceptional historical importance" above and beyond their possession in the custody of the Archivist; to confirm that they have been in existence for at least 30 years; to ensure that the legitimate interests of any living witnesses or investigative targets whose interests might be

The Honorable Reena Raggi
Page 8

prejudiced through disclosure are not prejudiced; and to confirm that no impairment of ongoing law enforcement activities would result. The rule also allows the court to impose reasonable conditions, such as redaction, to protect ongoing privacy or other interests.

Our proposal provides that an order granting or denying a petition for the release of historically significant grand-jury material is a final decision subject to appeal under 28 U.S.C. 1291. The Rules Enabling Act specifically provides that the federal Rules "may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title." 28 U.S.C. 2072(c). Because a petition to disclose grand-jury materials created in connection with a long-closed investigation or criminal case is neither a continuation of a criminal matter nor a traditional civil action, it seems appropriate to clarify that a district court order granting or denying such a petition is an appealable decision in its own right.

After 75 years, the interests supporting grand-jury secrecy and the potential for impinging upon legitimate privacy interests of living persons have virtually entirely faded. That is generally true for government records that are highly protected against routine disclosure. For example, most classified records in the custody of the Archivist that have not previously been declassified become automatically declassified after 75 years.[4] Thus, we propose that Rule 6(e) be amended to provide that, after 75 years, grand-jury records would become available to the public in the same manner as other archival records in NARA's collections, typically by requesting access to the records at the appropriate NARA research facility or by filing a FOIA request. See generally 36 C.F.R. Part 1256, Subpart B.

## C. Language of Proposed Amendment

Our proposed amendment includes three parts.

1. We propose to define the term "archival grand-jury records" by adding a new Rule 6(j), following the existing definition of "Indian Tribe" in Rule 6(I). (Alternatively, if the Committee preferred, these definitions could be consolidated into a single "definitions" paragraph.)

---

[4] Under Executive Order 13526, many classified records are automatically declassified at 25 years and most of the remaining classified records are automatically declassified after 75 years:

> Records exempted from automatic declassification under this paragraph shall be automatically declassified on December 31 of a year that is no more than 75 years from the date of origin unless an agency head, within 5 years of that date, proposes to exempt specific information from declassification at 75 years and the proposal is formally approved by the Panel.

Exec. Order No. 13,526, § 3.3(h)(3), 3 C.F.R. 310 (2010). For additional information on the automatic declassification process, see http://www.justice.gov/open/declassification-faq.html.

102

The Honorable Reena Raggi
Page 9

> (j) **"Archival Grand-jury Records" Defined.  For purposes of this Rule, "archival grand-jury records" means records from grand-jury proceedings, including recordings, transcripts, and exhibits, where the relevant case files have been determined to have permanent historical or other value warranting their continued preservation under Title 44, United States Code.**

2. We propose the following addition to Rule 6(e)(3)(E) to permit district courts to grant petitions for the release of archival grand-jury records that have exceptional historical importance after 30 years in appropriate cases:

> (E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:

> . . . .

> **(vi) on the petition of any interested person if, after notice to the government and an opportunity for a hearing, the district court finds on the record by a preponderance of the evidence that:**

> > **(a) the petition seeks only archival grand-jury records;**

> > **(b) the records have exceptional historical importance;**

> > **(c) at least 30 years have passed since the relevant case files associated with the grand-jury records have been closed;**

> > **(d) no living person would be materially prejudiced by disclosure, or that any prejudice could be avoided through redactions or such other reasonable steps as the court may direct;**

> > **(e) disclosure would not impede any pending government investigation or prosecution; and**

> > **(f) no other reason exists why the public interest requires continued secrecy.**

> **An order granting or denying a petition under this paragraph is a final decision for purposes of Section 1291, Title 28.**

3. Finally, we propose to make the following addition to Rule 6(e)(2) to establish the authority of NARA to release archival grand-jury materials in its collections after 75 years. Because Rule 6(e) is the only impediment to NARA's acting on a FOIA request for grand-jury records, all that is necessary is to state that Rule 6(e) shall not prohibit disclosure after that time.

103

The Honorable Reena Raggi
Page 10

The "require . . . to withhold from the public" formulation tracks the terms of FOIA Exemption 3, 5 U.S.C. 552(b)(3).

> (2) Secrecy.
>
> ....
>
> **(C)  Nothing in this Rule shall require the Archivist of the United States to withhold from the public archival grand-jury records more than 75 years after the relevant case files associated with the grand-jury records have been closed.**

* * *

We believe this proposal warrants timely and thorough consideration by the Advisory Committee, as it will eliminate the prevailing uncertainty over the authority of district courts to deviate from the scope of Rule 6(e) when faced with petitions for access to historically significant grand-jury material.  We also believe it strikes the appropriate balance between safeguarding the purposes of grand-jury secrecy and acknowledging the public's legitimate interest in obtaining access to grand-jury records that have enduring significance for the history of our Nation.

We look forward to discussing this with you and the Committee.

Sincerely,

Eric H. Holder, Jr.
Attorney General

cc:    Professor Sara Sun Beale, Reporter
       Professor Nancy J. King, Reporter

104